STEBBINS and others *against* COWLES and another.

The charter of incorporation of a manufacturing company exempted the stockholders from responsibility for the debts due from the company, provided that the company should lodge a certificate with the town-clerk of the town wherein their manufacturing establishment was situated, containing the amount of capital stock belonging to the company actually paid in ; and the amount thus certified should not be withdrawn, without the consent of the general assembly, so as to reduce it below that amount, nor below the sum of 20,000 dollars ; and if any part of the capital so paid in and certified should be so withdrawn, the directors ordering, causing or allowing such withdrawal, should be liable, jointly and severally, as traders in company, in case of the insolvency of the corporation, for all debts due from the corporation, at the time of or subsequently to such withdrawal. A certificate was duly lodged with the town-clerk, stating the capital paid in to be 20,000 dollars. *A, B* and *C*, directors of the company, afterwards commenced suits against the corporation, by writs of attachment, by virtue of which all the visible estate of the corporation was attached. The claims on which these suits were founded, consisted of moneys, invested by *A, B* and *C*, in the purchase of lands and buildings for the company, which, by their procurement, were charged over to and assumed by the corporation, and constituted a considerable part of the capital stock paid in and certified; which was done fraudulently, to deceive and injure the *bona fide* creditors of the corporation. During the pendency of these suits, *A, B* and *C* entered into an agreement with certain creditors of the corporation, by which the property attached was to be conveyed to *A, B* and *C*, and by them sold, and the avails divided among the parties to such agreement, after deducting 1800 dollars for the sole use of *A* and *B*. This was done accordingly. On a bill of discovery brought by *D*, one of the creditors of the corporation, who, without knowledge of the facts, had subscribed said agreement, against *A* and *B*, to aid in a suit or suits at law, which *D* intended to commence and prosecute for the recovery of his debt, (the corporation being insolvent) against all or some of the directors, it was held, 1. That the disposition so made of the corporate property, was a withdrawal of capital, by the procurement of the defendants, within the

*Hartford,*
*June, 1835.*

Stebbins
*v.*
Cowles.

proviso of the charter ; and consequently, *D* was entitled to resort to them for his debt ; 2. That *D* was not precluded from enforcing his right against the defendants, in consequence of his having signed the agreement; for it was entered into by *D*, under such circumstances that a court of chancery would set it aside ; 3. That it sufficiently appeared from the bill, that *D* intended to pursue his remedy against the persons liable ; 4. That, as the ascertainment of those persons depended in part upon the discovery, the designation of them in the bill, was sufficiently precise.

This was a bill in chancery for a discovery. The bill stated, That in the year 1828, a company was incorporated, by the name of the *Arrowmamet Manufacturing Company*, with a capital not exceeding 150,000 dollars ; that the charter of incorporation constituted the defendants, (*Gad Cowles* and *Martin Cowles*) with *Luther Spalding*, the first directors, and provided, that the stockholders should not be liable in their private capacity, for debts due from the company, provided that the company, within twelve months of the passing of the act, should lodge a certificate with the town-clerk of the town wherein their manufacturing establishment was situated, containing the amount of stock paid in and belonging to the company ; and the amount thus certified should not be withdrawn, without the consent of the general assembly, so as to reduce it below the sum stated in the certificate, nor below the sum of 20,000 dollars ; that in case of such withdrawal of capital, the directors ordering, causing or allowing it, should be liable, jointly and severally, as traders in company, in case of the insolvency of the corporation, for all debts due at the time of or subsequently to such withdrawal ; that a certificate was duly lodged, stating the amount of capital stock actually paid in, to be 20,000 dollars ; that afterwards, the corporation became largely indebted, and to the plaintiffs, among others, in the sum of 800 dollars, which is yet due ; that in *April*, 1830, the defendants and *Spalding* commenced suits against the corporation, by sundry writs of attachment, by virtue of which all the visible estate, both real and personal, of the corporation, was attached, leaving no means whereby the plaintiffs could obtain payment of their claim ; that on the 15th of *July*, 1830, while said suits were pending, and the liens created thereby were subsisting, the plaintiffs, and other creditors of the corporation, entered into an agreement with the defendants and *Spalding*, that all the property thus attached should be sold, and the avails, together with all the debts due the corporation,

should be divided among the creditors of the corporation who should subscribe that agreement, and the defendants and *Spalding*, deducting the sum of 1800 dollars for the sole use of the defendants; that shortly afterwards, all the personal estate of the corporation was received by the defendants, and all the real estate was conveyed to them; that the defendants and *Spalding* respectively claimed and pretended, that the debts and claims upon which said property was attached, were justly and legally due from the corporation; that these pretences were false and fraudulent, and made with design to defraud the plaintiffs, who relied upon them as true, and were then ignorant of the facts in the case; that before the act of incorporation, the defendants and *Spalding* purchased and procured a site and prepared the establishment for operation, and in so doing, either jointly or severally, incurred large expenses and liabilities, which, with other debts due from them, after the act of incorporation, they, or some of them, procured to be charged over to and assumed by the corporation, but to what amount is to the plaintiffs unknown; all which acts were done, by the defendants and *Spalding*, with the design of defrauding and injuring those who then were, or should thereafter be, *bona fide* creditors of said corporation, and of throwing upon such creditors expenses and losses which ought to have been borne by themselves; that soon after said incorporation, three pieces of land in *Middletown*, on one of which said establishment was situated, were conveyed, by the defendants and *Spalding*, to said corporation, for the consideration of 12,000 dollars, which, with the machinery, constituted the principal part of the capital stock paid in and certified as aforesaid; that the moneys and expences invested in the capital stock so paid in, or a large part thereof, were afterwards, by the procurement of the defendants and *Spalding*, or some of them, fraudulently and illegally, and with a view to deceive and injure the *bona fide* creditors of said corporation, charged over to and assumed by said corporation, and were thus, by the defendants and *Spalding*, or some of them, either actually withdrawn, or constituted the basis of the claims, or a large part thereof, upon which the attachments were issued; that after said incorporation and the lodging of said certificate, and while the defendants and *Spalding* were directors, they caused and allowed

*Hartford*,
June, 1835.

Stebbins
*v.*
Cowles.

the capital stock to be withdrawn, without the consent of the General Assembly, so as to reduce the same greatly below the amount stated in said certificate and below 20,000 dollars; that said corporation then was, and still is, insolvent; and that the defendants and *Spalding*, by reason of the matters afore-said, then were and still are liable, jointly and severally, as traders in company, for the debt due to the plaintiffs; of all which the plaintiffs were then wholly ignorant, but the same were well known to the defendants and *Spalding*.

The bill further averred, that the defendants and *Spalding*, fraudulently combining to defraud and injure the plaintiffs, have suppressed and concealed the evidence in relation to the facts above stated, and the plaintiffs were unable to prove them, by ordinary common law testimony ; that said corporation has no property of any kind, by means of which the plaintiffs can obtain payment of their debt, or any part thereof; and that the plaintiffs are desirous of commencing, and shortly in-tend to commence and prosecute a suit or suits, for the recovery of their debt, against all or some of those who now are, or heretofore have been, directors of said corporation.

Finally, the plaintiffs sought a discovery from the defen-dants, and each of them, touching the facts alleged in the bill, that their disclosures might be had and used on the trial of the suit or suits to be brought as aforesaid.

To this bill there was a demurrer ; and thereupon the case was reserved for the advice of this court.

*Storrs*, in support of the demurrer, remarked, That this being a bill of discovery to aid in an action to be brought at law, the plaintiffs must shew, 1. a right of action at law ; 2. against the defendants ; 3. that they intend to bring such ac-tion, and against whom. In other words, the plaintiffs must show—a title in themselves—against the defendants—and that they intend to sue accordingly. He then proceeded to show, that the bill was defective in these essential requisites.

1. A right to sue must be shewn, founded on the clause of the charter, which subjects the directors personally for with-drawing certified capital. No frauds done or intended, short of withdrawing certified capital, will lay the foundation of a suit on that clause. The facts stated in the bill shew no such withdrawal. The advances made by the defendants for the

land and buildings, were as beneficial to the corporation and its creditors, and every way the same in effect, as though the money had been first paid to the treasurer and then disbursed for the same purpose. It is substantially the mode of creating stock in all business corporations. The charging over and assumption of these expenditures, therefore, constituted no fraud; much less a withdrawal of capital.

It does not appear by the bill, that the liens created by the attachments were ever enforced, or the property of the company subjected or transferred on such liens. The plaintiffs are in the same situation as though the attachments had never been issued.

The plaintiffs cannot complain of the withdrawal of the capital, by virtue of the agreement of *July*, 1830; because they were parties to such agreement; unless they were induced to make such agreement, by deceptions practised by the defendants. This the facts stated do not show.

A part of the claims of the defendants, is admittted to be *bona fide ;* and a court of chancery may settle the amount due to the parties to the agreement, and order a distribution of the avails of the property conveyed to the defendants, accordingly.

2. If the plaintiffs shew a right of action at law, they have not averred *against whom* such action is to be brought. The averment is, that the plaintiffs intend to bring the action " against all or some part of those who now are, or have been, directors." Consistently with this averment, the action may be brought against *Spalding* alone, who is not a party to the present bill; and in that case, the present defendants would not be interested in the event of the suit; because *Spalding* could not make them contribute to indemnify him against a fraudulent withdrawal of the capital. It does not, therefore, appear, but that the defendants might be *common law witnesses* in the action. Against such a bill of discovery will not lie. *Coop. Eq. Plead.* 180. 177. 200. 202. 1 *Mad. Chan.* 196. [162, 3.] 2 *Sw. Dig.* 222. 225. The remarks of Lord *Eldon,* in *The City of London,* v. *Levy,* 8 *Ves.* 404, 5. are strong to this point.

8. It does not appear that in the action which will be brought, the discovery sought will be available or material; which is indispensable. See the authorities above cited.

*Hartford,*
June, 1835.

Stebbins
*v.*
Cowles.

Hartford,
June, 1835.

Stebbins
v.
Cowles.

*Hungerford,* contra, contended, 1. That the acts and pro-
ceedings of the defendants detailed in the bill—particularly, the
attachment by them of all the visible property of the company
on claims which they had certified as constituting the principal
part of the capital stock and procured to be charged over to and
assumed by the corporation, and then causing this property to
be conveyed to themselves, and disposed of for their own benefit.
and that of certain other creditors—and all this done frau-
dulently—amounted to a withdrawal of capital within the
proviso of the charter, and gave the plaintiffs, who were *bona
fide* creditors, a right of action against the defendants.

2. That the plaintiffs did not preclude themselves from enfor-
cing this right, by signing the agreement of *July,* 1830, inas-
much as they did it in ignorance of the facts, and were misled
by the false pretences of the defendants.

3. That the averment in the bill of the intention of the
plaintiffs to pursue their remedy, was adapted to the case, and
was as explicit as it could be, without the aid of the discovery
sought.   A court of equity will not require more.

WILLIAMS, Ch. J.   The objections to this bill, are, that it
does not disclose sufficiently a right of action at law,—at least,
not against these defendants; nor that the plaintiffs intend to
bring such a suit, nor against whom.

1. It is claimed, that the facts stated do not show, that capi-
tal has been withdrawn contrary to the charter : that the charge
and assumptions by the company of expenditures by the de-
fendants for land and buildings, is substantially the mode ta-
ken in banks and other business corporations.

The object of the act was, that by investments made by the
stockholders, or moneys actually paid in, there should be and
remain a capital equal to the sum certified to be the capital paid
in ; and that the public might always be apprized what that
was, a certificate was to be lodged in the town-clerk's office,
signed by the proper officer of the company.   This was intend-
ed to guard the public from giving unbounded credit, and to
apprize them how far they might confide in the responsibility
of the corporation.   This is the price the corporation is to pay
to avoid private responsibility.   If they do not fairly comply
with this, then the directors at least, shall be responsible in
their private capacity.   The obligation imposed is to be fairly

carried into effect; and if the directors will not submit to the terms, they must be content to become personally responsible.

Hartford, June, 1835.

Stebbins v. Cowles.

Upon the facts disclosed in this bill, has the sum of 20,000 dollars capital of this corporation, or has any part of it, been withdrawn ?

The bill charges, that to constitute this sum the defendants and *Luther Spalding* conveyed sundry pieces of land to the corporation, on one of which the establishment is placed ; that these, with the machinery, constituted a considerable part of the capital stock paid in and certified ; and that the moneys and expenses so invested were charged over to and assumed by said corporation, by the procurement of the defendants, and fraudulently, to deceive and injure the *bona fide* creditors of said corporation ; and were thus actually withdrawn, or constituted the basis of the claim, or a large part thereof, on which said attachments issued. Now, it is very doubtful whether this can be considered as an investment of capital at all. If the corporation owe the individual stockholders, for the amount of capital stock, they can hardly be said to have that amount of stock ; at all events, it is merely nominal. Nothing in fact is contributed, by the stockholders, to form this capital ; and a certificate that they have a capital stock of 20,000 dollars, if they owe the individual stockholders 20,000 dollars for it, is entirely delusive, and calculated to produce the very effect the certificate was intended to guard against ; calculated to induce the public to believe, that the corporation set out in business with an unembarassed capital of 20,000 dollars, when in fact the corporation was worth nothing. But as this is not the charge in the bill, it is not necessary to examine that question further.

The bill in fact admits, that the corporation had the capital, but charges that it has been improperly withdrawn, by the defendants.

The defendants, as directors, permitted these claims to be made, and for the purpose of carrying them into effect, instituted suits, by which the corporation property was all, or nearly all, attached. If, under these attachments, this property had been taken and sold, or set off on execution, there can be no doubt that it would have been a withdrawal of capital from the corporation. For these stockholders would thus take back into their own hands the very property which they had invested as capital ; and the corporation would be in the same situation as they would have been, had not this estate ever belonged to

the corporation. This property has not been taken upon the execution, and sold under it directly ; but the same thing has been effected in another way. By consent of the creditors, the corporation property has gone into the hands of the defendants and *Spalding*, to be sold to pay the defendants 1800 dollars, and then to divide the remainder among all those creditors who should enter into the arrangement. The defendants have thus consented, after covering the property by their attachments, that it shall be withdrawn from the capital stock, and appropriated to the payment of debts. This, the Court think, is a withdrawal of capital, by the consent or procurement of the defendants, both within the letter and spirit of the proviso. It does not, indeed, appear, that the liens by the attachments were ever enforced ; but it does appear, that by means of them, this arrangement was effected, and the property diverted from the capital stock.

It is said, that the plaintiffs are in the same situation as before the attachments issued, and therefore, cannot complain. This is not so ; for by the writing of the 15th of *July*, 1830, they assign to said *Gad* and *Martin* all their claim against said company. It is also stated, that all the personal estate, soon after said agreement, was transferred to said *Gad* and *Martin ;* and the real estate was also conveyed to them. But even if the property did remain in the same situation as before, yet if the defendants had so conducted as to be liable as traders in company under this proviso, the plaintiffs would not be obliged to give up their claim against them as traders in company, because the corporation might have some estate which they might attach.

Nor can the defendants say, that the plaintiffs were parties to that agreement, and therefore, cannot complain. If it be true, as stated, that the plaintiffs were then wholly ignorant of the facts herein stated, and the defendants made representations, which were fraudulent and untrue, with design to deceive and defraud them of their just claims and demands against said corporation, and the plaintiffs were thus drawn into this agreement, as stated in the bill, such representations might lead this Court to set aside the contract, if it had been closed. Of course, the consent of the plaintiffs to such a contract, under the circumstances disclosed in this bill, will have no effect upon their

rights. The objections, therefore, to the bill, on this ground, cannot prevail.

It was also objected, that the bill was insufficient, because it does not shew *against whom* an action is to be brought, or that the plaintiffs intend to bring any action. This Court has holden, that it could not direct a discovery, when it was apparent, that the defendants were not interested in the subject of it. *The Middletown Bank* v. *Russ* & al. 3 *Conn. Rep.* 135. 139. Here, the claim is, that the defendants and *Spalding* were directors, and by their procurement, the capital was withdrawn. It can hardly be said, then, that the plaintiffs are not interested in this subject.

But it is said, that the plaintiffs do not show against which of the defendants, or whether against any of them, they mean to bring a suit; and the opinion of Lord *Eldon,* in *The City of London* v. *Levy,* 8 *Vesey,* 404–5. is cited. The facts in that case clearly warrant the result to which the court arrived. It was a bill filed against *Z. Levy* and three other persons, who were partners, claiming duties on certain goods, stating that one of the partners made an entry of certain goods, in the name of another of the partners, as importers; that in fact the goods were the goods of *Levy,* not a partner, but an alien, which goods were liable to the payment of the duty which the plaintiffs were entitled to receive of the defendants, or *some* of them; that the defendants did not admit the goods to be the property of *Levy,* or any alien, or discover where they are; suggesting an intention to commence an action. The Lord Chancellor held the bill to be insufficient, and, among other things, remarked, that "it had never been laid down, that you can file a bill not venturing to state who are the persons against whom the action is to be brought, nor stating such circumstances as to enable the court, which must be taken to know the law, and therefore the liabilities of the defendants, to judge; but stating circumstances, and averring that you have a right to an action against the defendants, or *some* of them. That, of necessity, admits, that some of the defendants may be only witnesses." "The fraud is not charged as against the third partner. You have no right to a discovery, except against the person against whom you aver that you mean to bring your action. Upon that ground, this demurrer is good to all the defendants. Some of them are not alleged to have done a single

*Hartford,*
*June, 1835.*

Stebbins
*v.*
Cowles.

act in furtherance of the thing, or even to have had knowledge of it."

In that case, it did not appear whose duty it was, to pay this alien duty. The plaintiffs had not averred it; nor had they shown such facts as that the court could see it; of course, they showed no cause of action whatever. Here, the plaintiffs show, that the capital has been withdrawn, by the procurement of the defendants; and that they were directors. That *Spalding* was also a director, and aided them, can make no difference; for they may have other evidence against him,—perhaps his own confessions. The Chancellor's remarks relative to shewing the persons against whom the suit is to be brought, must be taken in connection with the facts before him, and with his next remark that such circumstances must be shown as to enable the court to see against whom *suit may be brought*. The opinion, then, is, that you must either show expressly against whom your action may be brought, or such facts as that the court can see against whom it may be brought, or they cannot see the necessity for the discovery. Stating circumstances, and averring that you have a right of action against them, or some of them, is not enough. He afterwards goes on to shew the fatal defect in the bill; that it did not appear who was liable to the duty; of course, they could have no right to a discovery, except against the persons against whom they meant to bring the action; and some of these defendants, he says, are not alleged to have done a single act in furtherance of the thing, or even have knowledge of it. It is believed, therefore, that the Lord Chancellor did not mean to change the rule. " that where an action is brought, or where the necessary effect in law of the case stated by the bill, appears to be, that the plaintiff has a *right* to bring *an action*, he is entitled to a discovery to aid that action, or which he appears to have a right and an intention to bring." 1 *Mad. Chan.* 163.

Here it is alleged, that the plaintiffs intend to commence and prosecute a suit or suits, for the recovery of the said debts, against all, or some of those, who now are, or heretofore have been, directors, &c. Here is a *prima facie* ground of action, stated, against the defendants and *Spalding*, which the plaintiffs mean to pursue against them, or some of them; but as it is claimed, the evidence is in the knowledge of the defendants, they cannot tell which of them they shall pursue, until they

have that testimony. *Moodamay* v. *Morton,* 1 *Bro. Ch. Ca.* 469. 471. This seems to be all that they could safely aver. It is certainly all that a prudent man would choose to aver; and it is not believed, that the case cited requires more.

It is said, that the court cannot, upon the allegations in this bill, determine whether the discovery would be available or not. In the view the court have taken of this case, the reverse of this proposition is true. The bill states facts, which, if true, will give the plaintiffs a right of action against the defendants and *Spalding.* They now call on the defendants to say, if they are true. If they admit them, then surely they go to prove a right of action against them. If one only of them admits them, they go to prove a right of action against him. In either event, then, the discovery may be available to the plaintiffs, in the action which they intend to bring, and support by this discovery.

The superior court are, therefore, advised to overrule the demurrer.

All the Judges concurred in this opinion.

Demurrer to be overruled.

