JOHNSON and another *against* SANFORD and others.

Where a case in equity, after a demurrer to the bill, which was overruled, and the report of a committee, was reserved, by the superior court, for the advice of all the judges, as to what decree should be passed ; it was held, that the sufficiency of the bill was *res adjudicata,* and no longer open for discussion.

*A* and *B* being in co-partnership, *C,* a creditor of *A,* attached the undivided half part of certain goods, in a suit against *A,* obtained judgment, and afterwards brought an action against the officer who served the attachment, for not holding the goods attached, to be taken in execution. During the pendency of this suit, *B* brought a bill in chancery for an injunction against its further prosecution, and for an adjustment of the partnership accounts ; but as the report of the committee appointed to ascertain the facts, did not shew, with the requisite certainty, that the property attached belonged to the co-partnership of *A* and *B,* or what was the interest of *A* in the partnership effects, at the time of the attachment ; it was held, that the facts found, did not constitute a sufficient basis of any decree in *B's* favour, and that the report ought not to be accepted.

*Qu.* Whether in this state, the interest of one partner in the partnership property, can be reached and appropriated, on an execution against such partner, for his individual debt ; and if so, in what mode ; or whether, in such case, the remedy is in chancery, and what that remedy should be.

THIS was a bill in chancery, brought to the superior court, for an adjustment of partnership accounts, an injunction, and other appropriate relief. A demurrer was filed to the bill, at the term to which it was brought, upon which there was then a hearing before the court, and the bill was adjudged to be sufficient ; and thereupon a committee was appointed to enquire into the truth of the facts stated in the bill. At a subsequent term, the committee reported, substantially, as follows.

Some time before the 18th of *October,* 1836, the plaintiffs, as co-partners, under the firm of *Johnson & Clarke,* entered into another co-partnership with *George Jones,* under the firm of *George Jones & Co.,* to carry on the business of manufacturing and vending tin and sheet-iron ware ; the plaintiffs, on the one part, and said *Jones,* on the other, to share equally in the profits. This co-partnership continued, until after the 3d day of *January,* 1837. On that day, *Benjamin C. Benham* prayed out a writ of attachment, in the name of *Nehemiah C. Sanford,* and by his consent, against said *Jones,* on a note given by him to *Sanford ;* by virtue of which writ, *Theophilus Nichols,* a deputy sheriff, attached,

as the property of *Jones,* the equal and undivided half part of 7 boxes of tin plate, 100*lb* of sheet-iron, and other articles of personal property.    The writ was duly returned, and, at the term of the superior court in *January,* 1838, the plaintiff in that suit recovered judgment against the then defendant, for the sum of 128 dollars, and costs of suit.    An execution on this judgment was taken out, and given to *Josiah B. Fairchild,* a deputy sheriff, who, on the 17th of *February,* 1838, while it was in full force, made demand thereon, both of said *Jones* and said *Nichols,* of the property so attached, to be applied on said execution ; but they respectively refused to pay the execution, or to deliver up the property, or any part thereof.    The value of the property, the undivided half of which was so attached, was 165 dollars.    On the 9th of *April,* 1838, a suit was instituted,[*] by said *Benham,* against said *Nichols,* in the name and with the consent of said *Sanford,* for not holding said property 60 days after final judgment rendered in the suit on which it was attached, to the end that the plaintiff might take it in execution.    This action, brought by said *Benham* against *Nichols,* was pending at the service of the present bill.    At the time of attaching said goods, they were delivered to a person, who gave a receipt for them, promising to keep them safely, and re-deliver them to said *Nichols ;* which receipt he still holds.

At the time when the first-mentioned suit was brought, by *Benham,* in the name of *Sanford,* against *Jones,* the latter had not withdrawn the whole of his share of the profits out of the co-partnership ; nor had he withdrawn all his stock therefrom.    The property and effects of the co-partnership were more than sufficient to pay all the debts due from it ; and at the time of serving said attachment, the interest of said *Jones* in the assets of the co-partnership, after the payment of all claims against it, was worth, at a fair estimate, the sum of 33 dollars.

On the 7th of *January,* 1837, the parties of the co-partnership of *George Jones & Co.,* executed articles of dissolution, whereby all the interest of said *Jones* therein, was transferred to the present plaintiffs, who thereupon assumed the payment of all the claims against the co-partnership, and purchased other property, and mingled it with the goods on hand at the time of the attachment ; and the goods thus mingled,

were generally manufactured into various articles of tin and sheet-iron ware before they were sold ; and this course was pursued by the plaintiffs, until the whole were finally disposed of.

The report concluded thus : " In determining, therefore, the precise amount of the receipts for property on hand, at the time of said attachment, belonging to *George Jones & Co.,* it is necessary to make allowances for the additions afterwards made to the stock, by the plaintiffs, for labour and other purposes of the business, and an allowance for the personal services of the plaintiffs in the same.   No inventory of goods on hand, at the time of the attachment, appears to have been made ; and no separate accounts appear to have been kept of sales made of the stock on hand, at the time of the attachment.   The enquiry, therefore, was one of extreme difficulty, to say nothing of the uncertainty which must finally rest upon the correctness of the result to which the committee have arrived.   They are of opinion, however, that the interest of said *Jones* in the partnership property and effects, measured by the receipts of absolute sales, and making proper deductions for additions of stock, labour, personal services, &c., would not materially vary from the amount above given, based upon estimates and valuations, *viz.* the sum of 33 dollars; which the committee find to have been the amount of said *Jones's* interest, at the time of said first-mentioned attachment."

Against the acceptance of this report, the defendants filed a remonstrance, alleging sundry matters, which the court found not to be true.   Upon the facts found by the committee, the question as to what decree ought to be made in the case, was reserved for the consideration and advice of this court.

The case was argued at the stated term, in *June,* 1840, by *Dutton,* for the plaintiffs, and by *Mix,* for the defendants, before three of the Judges, (*Church, Waite,* and *Sherman ;*) and after consultation, it was continued until an adjourned term, in *August,* when it was argued again, by the same counsel, before all the Judges.

*Fairfield,*
June, 1840.

Johnson
*v.*
Sanford.

*Mix*, for the defendants, (*a*) contended, 1. That upon the facts alleged in the bill, the plaintiffs were not entitled to relief in equity. [The presiding judge remarked, that the sufficiency of the bill, which had been considered and decided in the court below, was not open for discussion here. The counsel still insisted, that in coming to a right conclusion upon the case reserved, it was necessary to inquire into the allegations of the bill, as the decree must be founded on the facts *alleged and found*, and if the facts alleged were insufficient, no decree could be passed.]

2. That upon the facts found, the plaintiffs were not entitled to any decree in their favour, because it is not found, that the property attached was partnership property.

3. That the plaintiffs have precluded themselves from all equitable relief, by blending this property with that subsequently acquired, thereby producing an undistinguishable confusion of goods. They have thus put themselves out of the reach of a court of equity, by rendering it impracticable to ascertain *Jones's* interest in the property attached.

4. That if *Jones's* interest might have been ascertained, it should have been done, by a *sale*, public or private, and not by a *valuation ;* the former being the chancery method of ascertaining value in such case. *Sigourney* v. *Munn*, 7 *Conn. Rep.* 11. 324.

5. That there are other difficulties in the way of a decree for the plaintiffs. The decree must be founded on the whole stock and property on hand, and debts due, and must take the interest in the whole of this separate debtor, to go to this separate creditor. But the report does not ascertain this ; nor how much there was of other property besides that attached ; nor the amount of credits.

6. That if the plaintiffs are entitled to any relief, an injunc-

(*a*) At the stated term, a preliminary question was made by counsel, as to which party was entitled to go forward in the argument; *Mix*, for the defendants, claiming, that as he excepted to the report of the committee, the right of opening and closing belonged to him; and *Dutton*, for the plaintiffs, insisting, that as no decree had been passed, and the question now was, whether the plaintiffs were entitled to relief, and if any, what it should be, he ought to be heard first. The court decided this point in favour of the plaintiffs. But still, it seems most convenient, in reporting the case, to give the objections of the defendants priority in the arrangement. *R.*

tion will not be decreed. No greater power is vested in a court of chancery than that of restraining a court of law; and this power will not be exercised but in a case of imperious necessity, and controuling equity; and above all, must it appear, that no fault is imputable to the plaintiff. But here the delay and conduct of the plaintiffs amount to an admission on which the defendant has acted; and therefore, they are estopped now, by such admission. *Heane* v. *Rogers,* 9 *B. &. C.* 577. 586. per *Bayley,* J. *Rosc. Ev.* 25.

7. That, in any event, the defendants are entitled to costs in this suit. The plaintiffs having the books and the means of ascertaining *Jones's* interest, and not having tendered that amount to the separate creditor, he was compelled to attach, to reach this property; and now he is compelled to defend this suit, to ascertain its amount; and it is a sound principle of justice and equity, that the creditor shall have his costs for necessarily pursuing a course of law, to get an adjudged debt.

*Dutton,* for the plaintiffs, contended, 1. That as *Jones's* interest in all the partnership effects was only 33 dollars, and as the creditor took property belonging to the co-partnership, of the value of 165 dollars, the other partners must have sustained a legal injury, and are entitled to redress or relief, in some shape.

2. That the sufficiency of the bill is *res adjudicata,* and cannot be enquired into here. The superior court having overruled the demurrer, this is decisive until the judgment is set aside, on writ of error, or on motion in error.

3. That it sufficiently appeared, from the report of the committee, that the property attached was the property of the co-partnership.

4. That the bill having been adjudged to be sufficient, and the material facts alleged having been found true, the plaintiffs were, of course, entitled to a decree in their favour.

5. That a decree restraining proceedings at law against the officer or the receipter of the goods, and directing an adjustment of the partnership accounts, was the appropriate relief.

6. That this course was not obstructed, by any thing which the plaintiffs had done, or omitted to do. The doc-

trine of *Sigourney* v. *Munn* is not applicable to this case. There, the question was between partners ; here, between the attaching creditors of one partner, and the other partners. The partners cannot sell the property, after it has been taken out of their hands, by the attachment. Nor is it a just subject of complaint, in this case, that the plaintiffs continued their business after the attachment. Has every creditor, who attaches an individual partner's interest in the concern, for any amount, great or small, a right to insist upon an immediate dissolution, and a sale of all the partnership effects ? The consequences of such a doctrine would be ruinous.

7. That there was no adequate remedy at law. *Witter* v. *Richards,* 10 *Conn. Rep.* 37. *Brewster* & al. v. *Hammet* & al., 4 *Conn. Rep.* 540. *Barber* v. *The Hartford Bank,* 9 *Conn. Rep.* 407.

8. That if the plaintiffs are entitled to relief, they are also entitled to costs. This is the general rule, and the exceptions are rare, and take place only in peculiar cases.

Storrs, J. The counsel for the defendants has endeavoured to raise the question of the sufficiency of the bill. But that enquiry is not now properly before us. The superior court have, on a demurrer, adjudged the bill to be sufficient. That judgment must stand, and be deemed conclusive, until reversed. It can be reversed regularly, only by a writ of error, brought to this court, as an appellate tribunal for the correction of errors in the judgments or decrees of the superior court. No such proceeding has been, or, indeed, can, before the final decree in this case, be instituted. We are sitting, in this case, not as an appellate court, to correct errors, but merely as an advisory tribunal, to assist the superior court, at its request, by an opinion on the questions which it has presented to us for that purpose ; which opinion, when given, is not obligatory on that court, although it would be according to its uniform course to conform to it. The only question, on which our advice is now sought, relates to the decree or order, which, on the facts reported by the committee, ought to be made in this case. To consider any other, and especially that now attempted to be raised, would be, gratuitously to settle questions, which are not presented to us, on which our opinion would have no binding force,

and of which we have no cognizance here, and improperly to anticipate the decision of questions which may hereafter be brought before us, as an appellate tribunal, by an appropriate proceeding. The sufficiency of the bill, therefore, must be deemed to be settled, by the judgment of the superior court ; and cannot now be drawn in question, in this manner. Whether that judgment can be opened and re-considered, in the superior court, we are not called on to determine. Notwithstanding, however, this result, as to the propriety of examining the sufficiency of the bill, it is not intended, that the defendants may not here avail themselves of the omission, in the finding of the committee, of any facts, whether alleged in the bill or not, which are essential to a decree against them. For the decree being the conclusion of law from the facts found, it is competent to examine and contest their sufficiency.

*Fairfield,*
June, 1840.

Johnson
*v.*
Sanford.

The questions which have been argued in this case, and which we are called on to decide in the report of the committee, are, whether by the provisions of our statutes in regard to the levying of executions, the interest of one partner in the partnership property, can be reached and appropriated, on an execution against such partner, for his individual debt; and if so, in what mode ; or whether, in such a case, the remedy is in chancery, and what that remedy should be. These are questions of unusual importance ; they are attended with great difficulty ; have been the source of much perplexity and confusion ; and are not settled in the books, with such clearness as to furnish a safe practical guide. And, indeed, it is by no means certain, that the interests of community do not require some plain and comprehensive legislative provisions on the subject, in order to avoid the doubt and litigation to which it is constantly giving rise.

We are satisfied, that if it be necessary, in such a case as the present, to resort to a court of chancery, (on which question, or the others connnected with it, we intend to express no opinion,) the facts are too loosely and imperfectly found, in the report of the committee, in this case, to warrant an interference in behalf of the plaintiffs. 1. It is not found, by the committee, expressly, nor does it appear from their report, by necessary inference, that the property attached belonged to the co-partnership of *George Jones & Co.*, and

therefore, that the plaintiffs ever had any interest therein : a fact, which lies at the foundation of the relief sought in the bill, and which ought to appear expressly, and not be gathered from mere loose implication or conjecture.

2. The interest of *Jones*, in the partnership property of *G. Jones & Co.*, is not ascertained, with such certainty and precision, as to form the basis of any decree. It is, indeed, found, in the former part of the report, that, at the time of the attachment against him, he had not withdrawn the whole of his stock, or his share of the profits ; that the effects of said partnership were more than sufficient to pay its debts ; and that his interest in the assets of the partnership, after paying its debts, was worth thirty-three dollars ; but, in a subsequent part of the report, and in connexion with such finding, it is stated, that within a very short time after the service of the attachment, the partnership was dissolved, when *Jones* sold all his interest to his co-partners, the plaintiffs in this case, who assumed the payment of all the partnership debts, purchased additional property, mingled it with the property of *George Jones & Co.* on hand at the time of the attachment, and manufactured, and finally disposed of the whole ; no inventory having been made, or separate accounts kept, of the sales of the property of *G. Jones & Co.*, on hand at the time of such attachment ; and that, in ascertaining the amount of such property then on hand, it was necessary to make allowances for such addition to it, expenditures for labour, and other purposes of said business, and an allowance for the personal services of the plaintiffs. " The enquiry, therefore," the committee say, " was one of extreme difficulty, to say *nothing of* the uncertainty which must finally rest upon the correctness of the results to which they have arrived ;" and they conclude, with expressing an opinion, that the interest of *Jones* would not " materially vary from the amount before given, based upon estimates and valuations, *viz.* thirty-three dollars."

An answer to a bill in chancery, which should state facts thus vaguely and indefinitely, would clearly be insufficient ; and we think that it would be unsafe to pronounce on the rights of parties upon a report so uncertain and imperfect on its face. It appears, moreover, that the committee were prevented from being more certain and precise, in this respect, by the misconduct or negligence of the plaintiffs them-

selves, in omitting either to make an exact inventory of the partnership property, at the time of the attachment, or to keep a separate and correct account of sales, which would have furnished the information required with perfect accuracy.

*Fairfield,*
June, 1840.

Johnson
*v.*
Sanford.

We would, therefore, advise the superior court, that the report of the committee be not accepted.

In this opinion the other Judges concurred.

Report not accepted.