A. ELIJAH HART, TRUSTEE, *vs.* WILLIAM HENRY ROBERTS ET ALS.

First Judicial District, Hartford, May Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

General Statutes, § 751, provides that questions of law may be reserved for the advice of the Supreme Court of Errors in all cases in which an appeal could have been taken had judgment been rendered therein. *Held* that while exceptional situations might arise calling for a reservation of legal questions before the trial court had passed upon all questions of fact involved, yet in the interest of simplicity, directness and economy in the trial of causes, a reservation ought not as a rule to be made or entertained until the case had proceeded so far that a determination by this court of the questions propounded would necessarily enter into and be decisive of the final judgment to be rendered in the cause.

Questions as to the power of the Superior Court to order a sale of real estate constituting a testamentary trust fund, ought not to be reserved for the advice of this court, if the hearing as to the advisability of selling the property is held in abeyance by the trial court to await the receipt of such advice. A reservation under such circumstances will be dismissed as premature, since it calls for the determination by this court of questions which may quite likely prove to be merely academic.

Argued May 8th and 14th—decided June 12th, 1907.

APPLICATION by a testamentary trustee for authority to sell and convey certain real estate for a stated sum, and to invest the proceeds, brought to and reserved by the Superior Court in Hartford County, *George W. Wheeler, J.*, upon a finding of certain facts, for the advice of this court as to the power of the trial court. *Cause remanded without advice.*

The complaint alleged, and the answers of all parties admitted, the following facts: May 22d, 1898, William W. Roberts of Hartford died, testate, owning certain real estate in the city of Hartford described in the complaint. At his decease he left as his heirs at law and next of kin, a son, William Henry Roberts, who is unmarried, and a grandson, Henry Roberts Williams, both now living and

parties defendant.   Said Henry Roberts Williams is married and has three children, all minors and parties defendant.   By his will and its codicils the testator gave the residue of his estate, consisting of real and personal property and including the real estate in question, to the plaintiff trustee in trust for the life of said William Henry Roberts. By the terms of said trust the principal thereof was to remain intact, certain provisions out of the income were made in favor of said son and of said grandson, and of the surviving children of said grandson in the event of his death before that of said William Henry, and any balance of income was to be allowed to accumulate as a part of the *corpus* of the fund.   The gift over, upon the termination of the trust, was made, one half to the children of William Henry, share and share alike, and the other half to said Henry Roberts Williams, or, if he should have died, to his children, or if either said William Henry or said Henry Roberts Williams should have died leaving no one to take the share set out to him respectively, then that share was to go to those entitled to take the other share.   The court has found true the allegations of the complaint which set out at length and in detail the facts thus briefly summarized.

The complaint further alleged, and the answers admitted, that it was for the best interests of said trust estate and of the beneficiaries thereof that the real estate described in the complaint be sold and the avails thereof invested according to law;  that $225,000 had been offered by a responsible party therefor;  that said offer was a full and fair one; and that the plaintiff believed that it was for the best interest of said trust estate, and of the beneficiaries thereof, that the premises should be sold and the avails thereof invested. .

The court did not pass upon any of these allegations, but found that said Roberts and Williams and the guardian *ad litem* of the latter's minor children, being all of the defendants, desired to have a sale of the premises made, and believed it for the best interest of all concerned that a certain offer be accepted;  and expressly reserved the question

of the advisability of accepting said offer for further hearing after the advice of this court should be obtained upon the following questions of law, which were thereupon reserved for the determination of this court, to wit:—

"a. Whether this court (the Superior Court) has, in view of the terms of the will and codicils thereto, power to decree a sale of said premises.

"b. Whether this court has, in view of the terms of the will and codicils thereto, power to decree a sale upon terms other than cash.

"c. Whether this court has, in view of the terms of the will and codicils thereto, power to decree a sale upon the terms named in the offer attached and marked Exhibit B."

The offer thus referred to was one that the purchaser pay $45,000 in cash, assume a first mortgage of $83,000 already on the property, and give a note for $97,000 payable in specified instalments, bearing interest at the rate of five per cent. payable semi-annually, and secured by a mortgage upon the property subsequent to said first mortgage.

Before action had been taken by the court as above recited, the State's Attorney for Hartford County had, pursuant to the provisions of § 553 of the General Statutes, been directed to appear and to investigate the allegations of the complaint, and to do all things necessary and proper to protect all interests involved in the action and not actually represented in court by counsel; and he had reported that he was of the opinion that it was for the best interests of the trust estate and of the beneficiaries thereof that a sale be made conformably to the terms of said offer.

*Charles Welles Gross*, with whom was *Charles E. Gross*, for the plaintiff.

*Henry R. Williams*, for himself.

*Walter S. Schutz*, for Beatrice H. Williams *et als.*

PRENTICE, J. If the advice of this court upon the ques-

tions propounded be given and a negative reply be returned
to all of them, such advice would result in a final judgment
dismissing the action, and such judgment could be directed
by this court.   If, on the other hand, an affirmative reply
be given to one or more of the questions, the cause would
have to be remanded for a further hearing and the exercise
by the trial court of its reasonable discretion as to what
action it ought to take upon the facts as found, before the
judgment stage would be reached.   The judgment when
rendered might then be one in favor of either party, would
be one which this court could not direct, and might not be
one which was conformable to any advice given, since the
questions upon which advice was given might not enter
into the action of the court at all.   If upon the return of
the cause the trial court should, after its hearing, decide
either that a sale, a sale for other terms than cash, or a sale
upon the terms of the particular offer contained in the rec-
ord, would not be advantageous, this court would find it-
self in the position of having given advice upon a question
or questions which were purely academic and could serve
no helpful purpose in the decision of the cause.

.   The language of the statute (§ 751) is doubtless compre-
hensive enough to permit this court to entertain reserva-
tions of questions of law where the advice given will not
be decisive of the final judgment to be rendered in the
cause.   Doubtless, also, such reservations have been enter-
tained and possibly not infrequently.   Such, however, has
not been the case of late, repeated rulings having been made
in open court to the contrary.   *State* v. *Feingold*, 77 Conn.,
326, note, 59 Atl. 211.   See also *New York, H. & N. R.
Co.* v. *Boston, H. & E. R. Co.*, 36 Conn. 196.   But what-
ever authority the terms of the statute may confer, and
whatever practice may be discovered to have at some time
existed, it is certain that the statute did not contemplate,
and ought not to be construed to permit, that every ques-
tion which a trial court may encounter in the progress of a
cause, much less every one which it may anticipate that it
may encounter, might be brought here at once upon its be-

ing either met or scented from afar, and its determination had for the guidance of the trial court. Such a practice would inevitably result in this court being called upon to formulate principles of law which would never enter into the determination of a cause, to formulate such principles in an abstract form suited to more or less general application and not as related to a concrete state of facts and narrowed and simplified by such relation, to create a mass of dicta embodying statements of abstract general principles which might some day rise up to harass judicial action, and to unnecessarily multiply the number of appearances in this court which an action might have before final disposition was made of it.

We do not, however, wish to be understood as saying that no reservation ought to be made or entertained until the case is ready for final judgment. Situations have arisen and may well arise where such action would be in the interest of simplicity, directness and economy in judicial action. Such situations, however, will be those exceptional ones where the advantages resulting from such proceeding are manifest and distinct, and the question upon which advice is asked is one which will quite certainly enter into the determination of the cause.

The situation in the present case is not one of the exceptional character indicated; far from it. Our advice is asked upon three points, each involving considerations more or less foreign to the others. Whether any one of them will ever become pertinent cannot be told until the trial court has performed its functions. The slender thread by which one at least of them is hung to the case is apparent, and the vice of anticipatory abstract adjudications is well illustrated by that example. We are asked to advise whether the court has the power to authorize the acceptance of a certain offer which it does not appear that either the court or the trustee deems an advantageous one. It is quite possible that this request for advice involves the determination of an important question or questions having far reaching consequences, and yet the withdrawal

of the offer, the receipt of a better one, or an adverse finding as to the wisdom of acceptance for other cause, would quite likely remove them entirely from the case. Furthermore, if the advice asked should be given, and that advice should be favorable to the power of the court in any of the respects enumerated, the subsequent action of the trial court upon its hearing and in its exercise of its discretion would conceivably furnish ground for the reappearance here of the cause. The discretion which the trial court would in the end be called upon to exercise would not be an absolute but a reviewable one, and the hearing preliminary to its exercise might be productive of reviewable rulings.

If we look for advantage to be anticipated from the giving of the desired advice, to set off against the apparent disadvantages attending it, our search for anything substantial will be in vain. It would be a simple process for the court to pass upon the question of fact as to the desirability of making a sale upon the terms of the offer made, or upon other terms, and of reinvesting the proceeds, to exercise its discretion in either disapproving or approving one in some form and upon some conditions, and thereupon either rendering judgment, or, having thus exhausted its functions preliminary to judgment, reserving the cause for the advice of this court as to the judgment to be rendered upon the situation thus clearly defined. Thus the cause would come here with all possible questions pertinent to its final determination presented, with all questions having no such pertinence eliminated, with all questions narrowed to the precise situation in the case, and in such form that final judgment in conformity to our advice would follow and could be directed. Such a procedure would be the simplest and most direct one conceivable for the determination of the matters at issue, and avoid all possible circuity of action and the rendition of irrelevant and needless advice.

The cause is remanded without advice, to be proceeded with in the Superior Court.

In this opinion HAMERSLEY, HALL and THAYER, Js., concurred. ·

BALDWIN, C. J. (dissenting). Whether the advice asked for in this case by the Superior Court ought to be given, depends upon the true meaning of General Statutes, § 751, by which the General Assembly has exercised the authority committed to it by the Constitution (Art. V, § 1) to define by law the powers and jurisdiction of all courts, subject only to what may be implied from the names of the two courts which the Constitution itself recognizes and establishes.

In the summary of our judicial establishment prefixed to the first volume of the Connecticut Reports, after describing the practice which had grown up of reserving motions for a new trial for the advice of the nine judges of the Superior Court, of whom this court was then constituted, it is stated (p. xxv) that " Questions of law arising in any form, and appearing from the files, or from written documents, in causes before the Superior Court in the circuits, may also be referred, at the discretion of the court, or by consent of the parties, to the nine judges for their advice. These cases are then argued, by counsel, at one of the stated terms of the Supreme Court of Errors ; and the opinion of the judges, though given in the form of advice, will govern the Superior Court at the following sessions in the circuits from which the cases were brought, and will be regarded, generally, as the highest evidence of the law of the land."

That the court at this period felt free to entertain questions of law "arising in any form" is indicated by the causes reported. In the first volume of the Connecticut Reports, for instance, there was a reservation upon a demurrer to a bill in chancery, and we advised that the bill was insufficient. *Judah* v. *Judd*, 1 Conn. 309, 312. A few years later, on a similar reservation, our advice was that the demurrer be overruled. *Stebbins* v. *Cowles*, 10 Conn. 399, 409. ·This, under the settled rules of chancery

practice, left the defendant free to answer over, and therefore did not necessarily make a final disposition of the cause. So in the volume last cited, a reservation was entertained on a demurrer to a plea in abatement. *Hoyt* v. *Brooks*, 10 Conn. 188, 192.

That the advice asked for would not be refused because it might not determine the event of the cause, is strikingly shown by our opinion in *Johnson* v. *Sanford*, 13 Conn. 461, 466, 469. This was a bill in chancery which on demurrer had been adjudged sufficient. A committee had then been appointed, and the question reserved was as to the proper action to be taken on their report. We advised that it be rejected. The defendant's counsel claimed that the bill was insufficient, but was not allowed to be heard on that point, the court observing that this would be to anticipate the decision of a question that might thereafter be presented on a writ of error from the final judgment.

The ancient practice upon reservations which has been thus outlined received the sanction of the legislature in 1855, when the court was put upon a new and separate foundation. It was then enacted that " the superior court may reserve questions of law arising in cases tried before said court for the advice of the supreme court of errors, in the same manner as such questions are now reserved ; and the superior court shall conform to the advice of the supreme court of errors in the judgment, decree, or decision, made or rendered in such cases." Public Acts of 1855, Chap. 28, p. 38, § 6. It will be observed that these provisions contemplated the giving of advice not only as to judgments and decrees, but as to the " decision " of a question of law arising in cases tried. This word " decision " has been retained in all our revisions of this statute, nor does that now in force (General Statutes, § 751) differ in any respect from the Act of 1855, except in embodying the successive statutory extensions of the power to reserve such questions, in favor of judges of the Superior Court sitting at chambers, and any inferior courts over which we may have direct appellate jurisdiction.

The practice as to the nature of the questions that could be reserved continued, after 1855, to be precisely what it had been before.   Thus, in the reservations heard in 1857, there was one as to the disposition of a plea in abatement, upon which our advice was that it should be overruled, that is, that the cause should be heard on its merits.   *Canfield* v. *Wooster*, 26 Conn. 384, 389.   Another arose on a demurrer to a plea in bar, and our advice was that it was insufficient; *Bacon Academy* v. *De Wolf*, 26 Conn. 602, 606; another on a demurrer to a criminal information; *State* v. *Gager*, 26 Conn. 607, 608.

An examination of our reports, from the fifty-fourth to the sixty-third volume, inclusive of each, shows thirty reservations upon which we gave advice, of interlocutory questions, a decision of which would not necessarily determine the final judgment in the cause.   Of these questions, two arose on motions to erase from the docket; two on motions to quash; one on demurrer to a plea in abatement; two on demurrer or answer to an application for a writ of mandamus; eight on demurrer to a complaint; one on a motion to compel an amplification of the complaint; one on demurrer to a quo warranto information; four on demurrer to an answer; one on demurrer to a reply; three on objection to the acceptance of the report of a committee.

Of these causes, one (*State ex rel. Morris* v. *Bulkeley*, 61 Conn. 287, 23 Atl. 186) was the most important ever decided by this court.   In our opinion we said (p. 376) that, while the information as it stood was insufficient, if the relator should thereafter amend it in a particular way, it would be sufficient.   Another of them seems almost the precise analogue of that now before us.   A railroad company had applied to the railroad commissioners to approve the location of a station upon a highway.   The commissioners were of opinion that they had no jurisdiction to approve the taking of a highway for such a purpose.   To an application to compel them to act, and so either to approve or disapprove, they answered denying their power to act. The question of their power was thereupon reserved.   We

Hart v. Roberts.

decided that they had the power; and the location was subsequently approved. *State ex rel. New Haven & D. R. Co.* v. *Railroad Commissioners*, 56 Conn. 308, 315, 15 Atl. 756.

Against these precedents, which might be multiplied indefinitely, may be cited several of recent date, which may seem to look in a different direction. The only one appearing in our reports is *State* v. *Feingold*, 77 Conn. 326, 327, 59 Atl. 211, in which we were asked to advise as to the proper ruling on a demurrer to a complaint for the violation of a statute, the contention of the defendant being that the statute was unconstitutional. Advice that the complaint was insufficient would have left the defendant free to answer over (General Statutes, § 1513) and deny the facts charged. A court does not pass upon a defense founded on the unconstitutionality of a statute, except in a case of necessity. It was the opinion of a majority of the court that to present such a case, counsel should file a stipulation that a ruling on the demurrer would end the controversy, and this was accordingly done.

In two or three other cases, not reported, coming before us in recent years, a hearing has been refused on reservations of questions of law presented by demurrer to the complaint. This action has been taken by vote of a majority of the court in view of the special circumstances apparent upon the record presented. I was not one of the majority; but as no reasons were announced for those decisions, there was no occasion for stating my dissent. Of other reservations for advice, presenting circumstances of quite a similar character, and coming before us at about the same time, we assumed jurisdiction. See *Boothe* v. *Armstrong*, 76 Conn. 530, 534, 57 Atl. 173; *Downer* v. *Clarke*, 77 Conn. 186, 187, 200, 58 Atl. 735; *New York, N. H. & H. R. Co.* v. *Offield*, 77 Conn. 417, 422, 59 Atl. 510, 78 Conn. 1, 60 Atl. 740; *McGovern* v. *Mitchell*, 78 Conn. 536, 537, 540, 63 Atl. 433.

The opinion of the court in the case at bar is that the advice asked should be refused, because it does not present such questions as are contemplated by General Statutes,

Hart *v.* Roberts.

§ 751. It asserts that reservations ought not to be made or entertained in cases not ready for final judgment, unless exceptional situations are presented where the advantages resulting from such a proceeding are manifest and distinct, and the question upon which advice is asked is one which will quite certainly enter into the determination of the cause. I do not find any such limitation of jurisdiction in the statute, and the long-continued practice of the court down to 1904 seems to me quite inconsistent with the construction so put upon its terms.

For more than half a century before the Act of 1855, re-enacted in General Statutes, § 751, the statutes of the United States had provided that questions occurring in any case before a Circuit Court of the United States, when held by two judges, upon which their opinions were opposed, might be certified to the Supreme Court of the United States for its final decision, without, however, preventing proceeding in the cause in the Circuit Court, if this could be done without prejudice to the merits. In 1872, on account of the press of business in the Supreme Court, this mode of proceeding was confined to criminal cases; continuing as to them until the establishment of the Circuit Court of Appeals in 1891. See 2 U. S. Stat. at Large, 159; Rev. Stat., §§ 650–652. Jurisdiction to decide points so certified was never declined by the Supreme Court of the United States because they might not be decisive of the cause. " Certificates of division " were passed upon, for instance, when the question was as to whether some out of a greater number of grounds of demurrer (the others not having been passed upon by the Circuit Court) were well taken (*United States* v. *Waddell*, 112 U. S. 76, 5 Sup. Ct. Rep. 35) ; and when it was one occurring on a motion for a temporary injunction, but going to the merits of the case. *United States* v. *Chicago*, 7 How. (U. S.) 185, 191. If a cause, in the course of proceedings in which a question had been certified up and decided, at a later stage passed into judgment and exceptions were taken to the judgment for causes unconnected with the question certi-

fied, a writ of error lay upon them. *Daniels* v. *Railroad Co.*, 3 Wall. (U. S.) 250, 255.

The practice under this legislation of the United States was familiar to the bar of Connecticut, by one of whom the Act of 1855 must have been drafted, when that Act was passed. Our own practice since this court assumed a strictly judicial character in 1807 was still more familiar, and that has now been maintained for a full century, with no other interruption than that furnished by our action in the case of *New York, H. & N. R. Co.* v. *Boston, H. & E. R. Co.*, 36 Conn. 196, and the few recent rulings to which reference has been made, none of which were accompanied or followed by any statement of the reasons for making them.

In my judgment, when a point of law is sent up by a reservation for our advice at the request of all the parties to the cause, and with the approval of the trial court, it is as much our duty to decide it as if it were presented on an appeal. The remedy is a cheap and speedy one. It avoids the rendition of many judgments, which would be liable to reversal. It is no doubt possible that questions so reserved may be trivial, or such as ultimately prove to be immaterial to the final disposition of the case; but if it be desirable to change our practice so as to avoid the necessity of answering them, such a change, in my opinion, should come only from the General Assembly.