**ROBERTA, INC.**

v.

**INHABITANTS OF TOWN OF SOUTHWEST HARBOR.**

Supreme Judicial Court of Maine.

Argued June 28, 1982.

Decided Sept. 8, 1982.

Verrill & Dana, Charles A. Harvey, Jr. (orally), Portland, for plaintiff.

Silsby & Silsby, Sandra Hylander Collier (orally), Ellsworth, for defendant.

Before McKUSICK, C. J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

This case presents a narrow question involving the construction of 36 M.R.S.A. § 655(1)(I) (1978), the statute exempting from personal property taxation certain pleasure boats owned by nonresidents. Since our reading of the statute leads us to conclude that the Superior Court justice

erred in holding the pleasure boat in question taxable, we reverse the judgment entered below in favor of the Town levying the tax.

Plaintiff Roberta, Inc., is a Delaware corporation that owns the pleasure boat *Roberta,* which was built and outfitted in Maine by Henry R. Hinckley & Co. of Southwest Harbor. After being launched in early 1979, the *Roberta* through the summer was kept by its owner in nearby Northeast Harbor in order that the builder could do certain repairs and warranty work, including replacement of the engine. During that period the boat went on a one-month cruise to Canada in order to test the replacement engine the builder had installed under its warranty; a representative of the builder accompanied the boat on that cruise. During the repairs performed later in the summer, the boat was used for several short sails and trips in Maine waters. In the fall of 1979 the boat was hauled and stored at the Hinckley yard in Southwest Harbor so that during the winter the topsides could be completely repainted under warranty. The boat was still there on April 1, 1980, when the tax assessor of defendant Town assessed a tax on her in the amount of $2,331.17. When Roberta, Inc.'s request for total abatement was denied by the Town's Board of Assessment Review (the "Board"), it brought the present action in Superior Court (Hancock County) pursuant to M.R. Civ.P. 80B to challenge the assessment.

The parties stipulated to all the facts stated above, and further stipulated that but for the repairs the *Roberta* would not have been kept in Maine in 1979. On cross motions for summary judgment, the Superior Court entered judgment for defendant Town, holding that the Board had not clearly erred in finding that the boat had been "regularly kept" in the state during the year preceding April 1, 1980.

■ At issue in this case is the statutory exemption from personal property taxation of

[p]leasure vessels and boats in the State on the first day of each April whose owners reside out of the State, and which

are left in this State by the owners for the purpose of repair or storage, except those regularly kept in the State during the preceding year.

36 M.R.S.A. § 655(1)(I). *Prima facie* the *Roberta* on April 1, 1980, was entitled to the benefit of the statutory exemption because its nonresident owner had as of that assessment date left it in Maine for the purpose of repair *and* storage. The sole question posed by this appeal is whether the *Roberta* lost its *prima facie* tax exemption by application of the final exception carved out by section 655(1)(I) for "those [boats] regularly kept in the State during the preceding year." On the particular facts here stipulated, we hold that it did not, because as a matter of law it was not "regularly" kept in Maine during the preceding year within the meaning of the tax statute since it was in Maine only because of the necessary repairs and any use was incidental to the boat's presence here for repairs.

The thrust of the Town's argument is that if the nonresident's boat is in fact kept in Maine through the twelve months ending on the pertinent April first assessment date, the tax exemption is defeated, even if it was kept in Maine for purposes of repair and storage. Thus, the Town would have us construe section 655(1)(I) as establishing an easily administered, temporal test for determining when the *prima facie* tax exemption of a pleasure boat is lost: If the boat is physically kept in Maine during the preceding year, regardless of the purpose of its presence, the boat would by the Town's argument lose its exemption. Such a straight temporal test would, however, achieve ease of administration only by ignoring a more reasonable construction of the exemption, which is supported by the statute's legislative history, its language, and the interpretation placed upon it by the Bureau of Taxation. Those sources make clear that the exception to the exemption for boats regularly kept in the state during the preceding year refers to the purpose of their sojourn in Maine rather than to its duration.

The legislative debate surrounding passage of this statute and its predecessors demonstrates the legislature's obvious intent of encouraging nonresidents to patronize the state's boat repair and storage industry.[1] Accepted rules of statutory construction mandate that we construe and apply section 655(1)(I) to give effect to that intent. *See, e.g., Cummings v. Town of Oakland,* Me., 430 A.2d 825 (1981); *Schwanda v. Bonney,* Me., 418 A.2d 163 (1980). The construction urged by the Town would, however, frustrate the plainly articulated purpose of the statute in substantial part by excluding from the tax exemption pleasure boats in Maine for lengthy repairs or for extended storage. If the exemption is held to apply only to shorter term repair and storage, the business most profitable to Maine's boatyards is discouraged.

▮▮▮ The Town urges that its interpretation of the tax exemption accurately reflects accommodation to another concern expressed in the legislative debates, *i.e.,* that the tax base of many coastal towns would be seriously eroded if the exemption did not have a durational limitation.[2] It seems more likely that the legislature meant to specify a purpose or domicile limitation on the exemption since that closes significant loopholes without frustrating the primary intent of the statute.[3] Given alternative possibilities, when it is clear, as it is here, that the legislature enacted the legislation in question to address a specific problem, we are charged by the rules of statutory construction with adopting the construction that will best solve the problem. We cannot choose a construction which tends to nullify the legislative purpose. *See Waddell v. Briggs,* Me., 381 A.2d 1132 (1978).

If one were to read the phrase "except those regularly kept in the State during the preceding year" to impose a time limitation on the tax exemption, the modifying word *regularly* is rendered redundant. It then would add nothing in conceptual or administrative clarity to the time limitation expressed by the phrase "kept in the State during the preceding year." Since nothing in a statute may be treated as surplusage if a reasonable construction giving each word meaning and force is possible, *see Labbe v. Nissen Corp.,* Me., 404 A.2d 564 (1979), the adverb *regularly* must be given independent meaning.

Further bolstering a conclusion that the meaning given to *regularly* should refer to the purpose for which the boat was kept in the state is the administrative interpretation given to the exemption by the Bureau of Taxation in its Property Tax Bulletin No. 8 (Jan. 1, 1975). Although the tax bulletin is not a binding rule, it is issued in obvious performance of the State Tax Assessor's general supervisory authority over the administration of the property tax laws of this state. *See* 36 M.R.S.A. § 201 (1978). As such, it is an appropriate aid to our construction of the statute, for as we stated in *Kelley v. Halperin,* Me., 390 A.2d 1078 (1978), "the construction of a statute utilized by those whose duty it is to make it operative is entitled to great deference." Section 3(b)(1) of Property Tax Bulletin No. 8 provides:

> This exemption in general is restricted to pleasure vessels which are owned by nonresidents and which have been left in the State for storage or repair. Boats which

---

1. For debates prior to enactment of P.L. 1963, ch. 359 (exempting boats "left in this State temporarily by the owners for the purposes of repair or storage and for a consideration"), *see, e.g.,* 2 Leg. Rec. 2894–96, 2948–50 (1963). The exemption in its present form was substituted by P.L. 1965, ch. 331, *enacting* 36 M.R.S.A. § 655(1)(H) (Supp. 1966), which without change was renumbered as 36 M.R.S.A. § 655(1)(I) by P.L. 1973, ch. 592, § 13.

2. *See, e.g.,* 2 Leg. Rec. 2949–50 (1963).

3. In the 1963 debate in regard to the predecessor statute, one legislator expressed concern that camp owners in Maine towns would put their boats in storage to avoid the tax that would accrue if they left their boats at their camp docks. 2 Leg. Rec. 2895 (1963) (remarks of Rep. Jones). If the phrase "except those regularly kept in Maine" is viewed as a purpose limitation and read to mean "except those whose home port is in Maine," Rep. Jones's concern is addressed as well as it would be by a plain durational limitation.

have been in Maine waters during the preceding year, either incidental and preliminary to storage and repair or otherwise on a non-regular basis, are exempt; but those which were *regularly* kept in Maine waters during the preceding year are *not* exempt.

(Emphasis in original) The dichotomy established in the bulletin between boats in Maine waters "incidental and preliminary to storage and repair or otherwise on a non-regular basis" and boats regularly kept strongly implies that the purpose for the boat's being in Maine waters is determinative in applying the exception to the exemption. Thus, a boat like the *Roberta,* whose home port is outside Maine and whose presence in Maine waters is incidental and preliminary to storage and repair, would qualify for the exemption because its purpose for being here is a nonregular one.

The Superior Court erred in holding that the *Roberta* was *regularly* kept in Maine during the twelve months preceding April 1, 1980. First, the court—erroneously, we believe—treated plaintiff Roberta, Inc. as "conced[ing] 'regular' keeping in this State." [4] The factual stipulations entered into by the parties make clear that the keeping of the *Roberta* in Maine was primarily to permit accomplishment of repairs in Maine, thus negating a legal conclusion of regularity of the keeping within the meaning of section 655(1)(I). In a second place, the court gave improper weight to the fact that the *Roberta* was used for short sails and trips during the summer of 1979.[5] As a matter of law, all the use in Maine that is factually described in the stipulation of the parties was only incidental to the presence of the *Roberta* in Maine for required repairs and warranty work and did not alter the legal conclusion that during that summer the *Roberta* was not *regularly* kept in Maine within the meaning of section 655(1)(I).

The legislative history of the tax exemption for nonresidents' pleasure boats that are in Maine for repair or storage, as well as its language and its administrative interpretation, point to a construction of the words "regularly kept" to exclude boats physically present in Maine only for the purpose of, or incidental to, repairs or storage. The entry must be:

Judgment reversed.

Remanded for entry of the following judgment:

"The decision of the Board of Assessment Review of the Town of Southwest Harbor is reversed, and that Board is ordered to grant plaintiff an abatement of the property taxes assessed upon the boat *Roberta* as of April 1, 1980."

All concurring.

4. Both plaintiff's complaint and the parties' Agreed Statement of Facts stated: "If these repairs had not been necessary, the 'Roberta' would not have been regularly kept in Maine in 1979."

5. The Superior Court's opinion stated that "while the boat's presence in Southwest Harbor in [1979] was occasioned by warranty work, this was not the exclusive activity surrounding the vessel in [1979]."