STATE OF CONNECTICUT *v.* LEO ZACH ET AL.
(12197)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued November 8—decision released December 24, 1985

*K. Wynne Bohonnon* and *R. William Bohonnon,* with whom, on the brief, was *David M. Bohonnon,* for the defendants.

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom was *Edward J. Leavitt,* assistant state's attorney, for the plaintiff.

DANNEHY, J. The defendants are recreational boaters who received infractions complaints during the sum-

mer of 1982 for their alleged failure to comply with General Statutes (Rev. to 1981) § 15-142, as amended by Public Acts 1982, Nos. 82-283, 82-348, which provides for the registration of vessels operating in state waters. Thirty-seven cases have been consolidated for the purpose of obtaining a determination by this court of certain issues raised in the infractions complaints. The defendants challenge the constitutionality of General Statutes § 15-142, and thus the basis on which the infractions complaints were issued, by way of five questions[1] reserved to us under Practice Book § 3133. For the reasons which follow, we find that the questions were improvidently reserved and remand these cases for trial.

We begin by outlining the statutory regulation scheme under which these infractions complaints were issued. Section 15-142 (a) of the General Statutes requires every vessel operating in Connecticut waters to display a valid registration number, issued by the state of Connecticut, another state or the United

---

[1] The reserved questions are as follows:

"A. Are [Public Acts 1982,] No. 82-283 and [Public Acts 1982,] No. 82-348 violative of the due process clause of the U.S. Constitution?

"B. Are [Public Acts 1982,] No. 82-283 and [Public Acts 1982,] No. 82-348 contrary to the established federal system of admiralty jurisdiction as embodied in the U.S. Constitution, statutes and case law; specifically the judiciary act of 1789?

"C. Are [Public Acts 1982,] No. 82-283 and [Public Acts 1982,] No. 82-348 violative of the precepts of the commerce clause of the U.S. Constitution?

"D. Are [Public Acts 1982,] No. 82-283 and [Public Acts 1982,] No. 82-348 violative of Article I, Section 10, clause 3, of the U.S. Constitution which prohibits a state from imposing a tonnage tax?

"E. Are federally documented vessels owned by foreign corporations homeported in other states having no connection with Connecticut liable for a sales or use tax in Connecticut?"

We note that Public Acts 1982, Nos. 82-283 and 82-348, are incorporated into various sections of General Statutes, title 15, especially §§ 15-142, 15-143 and 15-144. Although the parties have not amended the reservations, we assume that the specific statutory provision to which they refer is § 15-142 (b). See footnote 2, infra.

States. Vessels bearing a valid registration number issued by another state or the United States are expressly exempted from the Connecticut vessel registration numbering system. General Statutes (Rev. to 1981) § 15-143 (a) (6), as amended by Public Acts 1982, Nos. 82-283, 82-436, 82-472. Such vessels, however, if used in Connecticut waters for more than sixty days in any calendar year, must display a valid Connecticut registration decal. General Statutes § 15-142 (b).[2] A registration number and a registration decal are obtained in the same manner. The registrant must file

[2] "[General Statutes] Sec. 15-142. VESSEL NUMBERING REQUIREMENTS. CERTAIN VESSELS REQUIRED TO DISPLAY REGISTRATION DECALS. (a) Every vessel upon the waters of this state shall be numbered, except as otherwise provided in this section and section 15-143. No person shall launch, moor or operate and no owner shall permit the launching, mooring or operation of any vessel unless (1) the owner holds a valid, effective certificate of number awarded by this state or by the United States or by another state pursuant to the provisions of the Federal Boat Safety Act of 1971 and the identification number set forth in such certificate is displayed on each side of such vessel at the bow, (2) the owner holds a valid marine document issued by the United States Coast Guard or (3) such vessel is otherwise not required to be numbered in this state under the provisions of said section 15-143.

"(b) Each vessel with respect to which the owner holds a valid marine document issued by the United States Coast Guard, a valid certificate of number awarded by the United States pursuant to the provisions of the Federal Boat Safety Act of 1971 or a valid certificate of number awarded by another state, which vessel is used upon the waters of this state for more than sixty days in any calendar year, shall be required to display a Connecticut registration decal. No person shall launch, moor or operate and no owner shall permit the launching, mooring or operation of any such vessel unless (1) the owner holds a valid, effective certificate of registration awarded by this state and (2) the registration decal is displayed as directed by the commissioner of environmental protection.

"(c) Violation of any provision of this section shall be an infraction."

"[General Statutes] Sec. 15-143. EXCEPTIONS TO NUMBERING REQUIREMENT. (a) Vessels of the following classes are not required to be numbered by this state . . . (6) vessels principally used in another state for which valid, effective certificates of number were awarded by the United States or by such other state pursuant to the provisions of the Federal Boat Safety Act of 1971; provided, the owner of a vessel used in this state for more than sixty days in any calendar year shall be required to comply with the registration requirements in section 15-144 . . . ."

the proper application form and pay a registration fee to the commissioner of motor vehicles. General Statutes (Rev. to 1981) § 15-144 (a), as amended by Public Acts 1982, Nos. 82-283, 82-348, 82-436.[3] The failure to display a proper registration number or decal in accordance with the statute is punishable by a fine of not less than $25 nor more than $200. General Statutes § 15-144 (h).

We reproduce in a footnote the stipulation of facts submitted by the parties.[4] From the stipulation and

---

[3] "[General Statutes] Sec. 15-144. VESSEL REGISTRATION NUMBER OR REGISTRATION DECAL. SCHEDULE OF FEES PAYABLE TO COMMISSIONER OF MOTOR VEHICLES. (a) Any owner desiring to obtain a vessel registration number or registration decal shall apply to the commissioner of motor vehicles and shall file evidence of ownership by affidavit or document. Upon receipt of an application in proper form and the numbering fee, the commissioner of motor vehicles shall assign a registration number or registration decal and provide the owner with a temporary certificate of number or temporary certificate of decal. The commissioner of motor vehicles shall issue two registration decals and a permanent certificate. A registration decal shall be displayed on each side of the vessel at the bow in a manner prescribed by the commissioner of environmental protection. The certificate shall state the name of the owner, his address, a description of the vessel, its hull identification number, the expiration date of the certificate and such other information as the commissioner of environmental protection may prescribe by regulations . . . ."

[4] "STIPULATION

"The parties herein unite in requesting the Court to reserve the above entitled action for the advice of the Supreme Court upon the questions arising therein, and stipulate and agree as follows:

"The facts upon which the questions arise are as follows:

"1. Along the shores of Long Island Sound extending from Greenwich to Stonington there are numerous harbors in the navigable rivers and waters of Connecticut. At various harbors are scores of marinas and yacht clubs to service the needs of vessels in navigation.

"2. During the course of a year thousands of vessels pass through the waters of Long Island Sound in navigation and interstate commerce using the facilities of the harbors and yacht clubs.

"3. Long Island Sound and the harbors thereon are navigable waters of the United States some of which are within Connecticut or New York.

"4. In navigating from port to port along or through Long Island Sound, vessels pass through navigable waters within the states of Connecticut and New York.

additional information gleaned at oral argument, the following facts appear. All except five of the defendants are Connecticut residents. The vessels in question are pleasure craft owned by unspecified Delaware corporations of which some of the defendants are shareholders. None of the vessels lists a location in Connecticut as its home port. During the summer of 1982 the defendants at various times "chartered" the vessels from the Delaware corporations for weekend boating

"5. Throughout the summer months thousands of vessels ply these waters.

"6. During the summer months many of these vessels' operators engage mooring facilities at marinas or yacht clubs in Connecticut for a period in excess of 60 days.

"7. Other vessels will ply the waters cruising from port to port being in waters of Connecticut for more than 60 days using the facilities of several different marinas or yacht clubs in Connecticut.

"8. Yacht clubs and commercial marina operators, pursuant to the terms of P.A. NO. 82-283 and P.A. NO. 82-348 are required to keep records in reference to vessels which are not registered in Connecticut which use their facilities.

"9. Agents of the D.E.P. and local police charged with the enforcement of P.A. NO. 82-283 and P.A. NO. 82-348, formed marina squads and visited various harbors, marinas, and yacht clubs checking vessels not registered in Connecticut.

"10. The marina squads gave written notice to unregistered vessels and their operators to register pursuant to P.A. NO. 82-283 and P.A. NO. 82-348.

"11. Some of the owners had applied to the Department of Motor Vehicles of the State of Connecticut to register under the Connecticut Motor Boat Registration Act and tendered the appropriate fee.

"12. They were denied registration solely for the reason the applicant could not show proof of having paid a Connecticut Sales Tax or a Use Tax in the amount of 7½% of the purchase price of the vessel, and for refusal to pay a Sales or Use Tax of 7½% of the purchase price of the vessel to the Department of Revenue Services.

"13. The State of Connecticut, through various of its agencies is attempting to enforce the provisions of P.A. NO. 82-283 and P.A. NO. 82-348.

"14. Agents of the D.E.P., local police, and other enforcement agents have issued summonses to the defendants for operating unregistered vessels in violation of provisions P.A. NO. 82-283 and P.A. NO. 82-348 even though the vessels are documented under Title 46 USC 11.

"15. Agents of the D.E.P., local police, and other enforcement agents have issued summonses to various defendants for failure to display a regis-

and fishing trips and other boating activities on Long Island Sound. The vessels in question are "federally documented," i.e., registered and numbered under the laws of the United States.[5] Although the vessels were

tration decal on the vessel after having been used on navigable waters in Connecticut for a total of more than sixty days within the calendar year.

"16. The defendant Daniel Cowan is a resident and domiciliary of Albany, New York.

"17. The defendant Dr. Leo Zach is a resident and domiciliary of New York, New York.

"18. The defendant Herbert W. Owen is a resident and domiciliary of Key Largo, Florida.

"19. The defendant Dale Phelon is a resident and domiciliary of East Longmeadow, Mass.

"20. The defendant Richard Gandelman is a resident and domiciliary of Moreo, Florida.

"21. All of the vessels are documented under Title 46 USC 11 with homeports of Wilmington, Delaware or Fort Lauderdale, Florida, or jurisdictions other than Connecticut.

"22. At the time of the alleged violation of the Connecticut Motor Boat Registration Act, (P.A. NO. 82-283 and P.A. NO. 82-348) each defendant was operating a vessel documented under 46 USC 11 in navigable waters of the United States and Connecticut.

"23. Each of the vessels which each of the defendants was operating on the date of their arrest for a violation of P.A. NO. 82-283 and P.A. NO. 82-348 was owned by a Delaware Corporation, from which they were chartered.

"24. Each vessel was and continues to be validly documented and registered pursuant to 46 USC 11 (The Shipping and Registry Recording Act) with a homeport of Wilmington, Delaware or Fort Lauderdale, Florida, or a jurisdiction other than Connecticut and in interstate commerce.

"25. Each of the vessels involved had been on navigable waters of the United States within the State of Connecticut for a total of 60 days within the calendar year of 1982 and in interstate commerce.

"26. Each of the vessels had been purchased by a Delaware corporation which had taken delivery of the vessel in a state other than Connecticut.

"27. Other than being in interstate commerce the Delaware Corporations owning the vessel which the defendants operated had no connection with Connecticut and have not qualified to do business in Connecticut.

"28. The other individual defendants are domiciliaries of Connecticut . . . ."

[5] According to the stipulation, the vessels in question are registered under 46 U.S.C. § 11, which was repealed by Public Law No. 96-594, title 1, § 127, 94 Stat. 3459 (1980). We can only assume that these vessels are now registered under 46 U.S.C.A. § 12101 et seq. (1983). Since the defendants claim,

used in Connecticut waters for more than sixty days during the summer of 1982, none of them bore a Connecticut registration decal as required by General Statutes § 15-142 (b), and each of the defendants was issued an infractions complaint for his or her operation of one of these vessels without the required decal. Some of the corporate owners attempted to obtain registration decals for their vessels by filing an application form and tendering the registration fee as provided in General Statutes § 15-144 (a). The commissioner of motor vehicles, however, refused to issue the decals because the owners had not paid the state use tax on the purchase price of the vessels. General Statutes (Rev. to 1981) § 12-411.[6]

The five questions reserved to us are as follows: "(A) [Is General Statutes § 15-142] violative of the due process clause of the [United States] Constitution? (B) [Is General Statutes § 15-142] contrary to the established

in part, that General Statutes § 15-142 is "contrary to the established federal system of admiralty jurisdiction"; see footnote 1, supra, question "B"; we believe it appropriate on remand that they introduce into evidence the documents and federal statutes pertaining to the registry of these vessels. Only then may their claim under the supremacy clause be properly evaluated.

[6] " [General Statutes] Sec. 12-411. THE USE TAX. (1) IMPOSITION AND RATE. An excise tax is hereby imposed on the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or any other use in this state at the rate of seven and one-half per cent of the sales price of the property, and in lieu of said rate of seven and one-half per cent at the rate of three and one-half per cent with respect to the rendering of any service described in subdivision (i) of subsection (2) of section 12-407.

"(2) LIABILITY FOR TAX. Every person storing, accepting, consuming or otherwise using in this state services or tangible personal property purchased from a retailer is liable for the tax. His liability is not extinguished until the tax has been paid to this state, except that a receipt from a retailer engaged in business in this state or from a retailer who is authorized by the commissioner, under such regulations as he may prescribe, to collect the tax and who is, for the purposes of this chapter relating to the use tax, regarded as a retailer engaged in business in this state, given to the purchaser pursuant to subsection (3) of this section is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers. . . ."

federal system of admiralty jurisdiction as embodied in the [United States] Constitution, statutes and case law; specifically the judiciary act of 1789? (C) [Is General Statutes § 15-142] violative of the precepts of the commerce clause of the [United States] Constitution? (D) [Is General Statutes § 15-142] violative of Article 1, Section 10, clause 3, of the [United States] Constitution which prohibits a state from imposing a tonnage tax? (E) Are federally documented vessels owned by foreign corporations homeported in other states having no connection with Connecticut liable for a sales or use tax in Connecticut?"

We begin with the observation that the reserved questions as phrased require us to pronounce upon the facial validity of General Statutes § 15-142. It is a settled rule of constitutional adjudication that a court will decide the constitutionality of a statute only as it applies to the particular facts at hand. *State* v. *Madera,* 198 Conn. 92, 105, 503 A.2d 136 (1985); *State* v. *Pickering,* 180 Conn. 54, 57, 428 A.2d 322 (1980); *Shaskan* v. *Waltham Industries Corporation,* 168 Conn. 43, 49, 357 A.2d 472 (1975). A party who challenges the constitutionality of a statute must prove that the statute has adversely affected a protected interest " 'under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist.' *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471, 217 A.2d 698 (1966); *State* v. *Cuvelier,* 175 Conn. 100, 111–12, 394 A.2d 185 (1978); *Gentile* v. *Altermatt,* 169 Conn. 267, 307, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *Kellems* v. *Brown,* 163 Conn. 478, 483, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1972); *Adams* v. *Rubinow,* 157 Conn. 150, 152–53, 251 A.2d 49 (1968)." *Weil* v. *Miller,* 185 Conn. 495, 501, 441 A.2d 142 (1981).

This principle reflects the conviction that "under our constitutional system courts are not roving commissions assigned to pass judgment on the validity" of legislative enactments. *Broaderick* v. *Oklahoma,* 413 U.S. 601, 610–11, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). The effect of an answer in the affirmative to any one of the reserved questions would be to declare General Statutes § 15-142 unconstitutional in its entirety.[7] The issue, however, as we must address it, is whether the statute has been unconstitutionally applied to these defendants. We are bound " 'never to anticipate a question of constitutional law in advance of the necessity of deciding it [and] never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " *United States* v. *Raines,* 362 U.S. 17, 21, 80 S. Ct. 519, 4 L. Ed. 2d 524 (1960); *Secretary of the State of Maryland* v. *Joseph H. Munson Co.,* 467 U.S. 947, 955, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984); *State* v. *Madera,* supra, 105. "A judicial holding that a legislative Act is unconstitutional is one of very grave concern. We ought not, and will not, declare a statute to be unconstitutional unless our judgment is formed in the light of this rule of our law: 'It is our duty to approach the question with caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the

---

[7] This statement is especially true with respect to the first four questions reserved to us. We find the fifth question particularly inappropriate for a different reason. The fifth question is: "Are federally documented vessels owned by foreign corporations homeported in other states *having no connection* with Connecticut liable for a sales or use tax in Connecticut?" (Emphasis added.) It should be quite obvious that items of personalty having no connection with this state are not subject to the use tax. *Stetson* v. *Sullivan,* 152 Conn. 649, 653–54, 211 A.2d 685 (1965). The question as phrased assumes its conclusion. The connection or nexus between these vessels, their corporate owners and the state of Connecticut is the precise fact at issue in this case. Therefore, this question is not, in our opinion, "reasonably certain to enter into the decision of the case" as required by Practice Book § 3133, and we do not answer it.

Act unless its invalidity is, in our judgment, beyond a reasonable doubt.' *Beach* v. *Bradstreet,* 85 Conn. 344, 349, 82 Atl. 1030 [1912]." *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 205, 132 A. 561 (1926); *Beccia* v. *Waterbury,* 192 Conn. 127, 133, 470 A.2d 1202 (1984); *Logan* v. *O'Neill,* 187 Conn. 721, 729, 448 A.2d 1306 (1982); *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 134, 32 A.2d 547 (1943).

These principles of constitutional jurisprudence are no less pertinent here merely because the issues have been presented by way of reservation. This court declared long ago that our reservation procedures do not "contemplate, and ought not to be construed to permit, that every question which a trial court may encounter . . . might be brought here at once upon its being either met or scented from afar . . . ." *Hart* v. *Roberts,* 80 Conn. 71, 74–75, 66 A. 1026 (1907). We recognized that such a practice might "inevitably result in this court being called upon to formulate principles of law which would never enter into the determination of a cause, to formulate such principles in an abstract form suited to more or less general application and not as related to a concrete state of facts and narrowed and simplified by such relation, to create a mass of dicta embodying statements of abstract general principles which might some day rise up to harass judicial action, and to unnecessarily multiply the number of appearances in this court which an action might have before final disposition was made of it." Id., 75. We recently emphasized the importance of these "discretionary prudential concerns" to our determination of whether a reservation should be answered. *State* v. *Sanabria,* 192 Conn. 671, 684, 474 A.2d 760 (1984).

Therefore, we will not review the facial validity of General Statutes § 15-142, and the only question which remains is whether that statute has been constitutionally applied in the cases before us. That determination

is dependent to an unusual degree on the facts and circumstances of the individual case. The facts of record in the present matter, however, are insufficient to afford a basis for resolution of the issues presented. It is only where the parties fully and fairly disclose all of the relevant information that we may perform the careful inquiry and thorough examination required of us in constitutional determinations. *Beach* v. *Bradstreet,* supra. We have frequently declined to hear reservations where the factual record was deficient. *Wiegert* v. *Pequabuck Golf Club, Inc.,* 150 Conn. 387, 391, 190 A.2d 43 (1963); *State* v. *Doe,* 149 Conn. 216, 231, 178 A.2d 271 (1962); *Carroll* v. *Socony-Vacuum Oil Co.,* 136 Conn. 49, 66, 68 A.2d 299 (1949); *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213, 217, 21 A.2d 383 (1941); *Claffey* v. *Bergin,* 121 Conn. 695, 696, 183 A. 16 (1936). On occasion we have summarily remanded a case for trial where the record was "insufficient to afford a basis for an answer to the reserved questions." *Doe* v. *Herrington,* 191 Conn. 496, 466 A.2d 1 (1983). In such cases we have found that the questions "could be passed upon to much better advantage if the cause was tried and the facts fully developed." *Barr* v. *First Taxing District,* 147 Conn. 221, 225, 158 A.2d 740 (1960); *Greenwich Trust Co.* v. *Brixey,* 117 Conn. 663, 664, 166 A. 918 (1933); see Maltbie, Conn. App. Proc. § 233. In the present matter, for the guidance of the parties and the trial court on remand, we briefly identify certain factual areas which we believe require further development. Our discussion is by no means exhaustive.

While the defendants purport to challenge the constitutionality of the vessel registration scheme provided in General Statutes § 15-141 et seq., and especially § 15-142 (b), their real complaint is with the attempted imposition of the state use tax upon the vessels in question. The commissioner of motor vehicles is presum-

ably directed by some statute or agency regulation— inexplicably left unspecified by the parties—to withhold a vessel registration decal until proof is furnished that any applicable sales or use tax has been paid. See General Statutes § 12-430 (3).[8] The parties are surely aware that this court will not speculate as to the statute upon which a constitutional ruling is sought. General Statutes § 15-144 (a) provides that "[a]ny owner desiring to obtain a vessel registration number or registration decal shall apply to the commissioner of motor vehicles and shall file evidence of ownership by affidavit or document. Upon receipt of an application in proper form and the numbering fee, the commissioner of motor vehicles *shall* assign a registration number or registration decal . . . ." (Emphasis added.) According to the stipulation, the vessel owners followed these statutory procedures. As we understand General Statutes § 15-144 (a), the duty of the commissioner to issue a registration decal is ministerial. Since that statute is silent with respect to the use tax, the commissioner's refusal to issue registration decals unless the tax has been paid must be premised on statutes or administrative regulations other than General Statutes § 15-144 (a). Therefore, on remand the parties should identify the statutes or administrative regulations under which the commissioner acts in requiring pay-

---

[8] General Statutes § 12-430 (3) provides: "(3) EVIDENCE OF TAX ON MOTOR VEHICLES, BOATS AND SNOWMOBILES. Each person before obtaining an original or transferral registration for a motor vehicle, boat or snowmobile in this state shall furnish evidence that any tax due thereon pursuant to the provisions of this chapter has been paid in accordance with regulations prescribed by the commissioner of revenue services, and on forms approved by the commissioner of revenue services and the motor vehicle commissioner. The motor vehicle commissioner shall, upon the request of the commissioner of revenue services, after hearing by the commissioner of revenue services, suspend or revoke a motor vehicle, boat or snowmobile registration of any person who fails to pay any tax due in connection with the sale, storage, use or other consumption of such motor vehicle, boat or snowmobile pursuant to the provisions of this chapter."

ment of the use tax before issuing a registration decal as directed by General Statutes § 15-144 (a). See, e.g., General Statutes § 12-430 (3). We further recommend that the parties ascertain whether there exist any applicable rules or administrative procedures within the department of motor vehicles whereby one might avoid liability for the use tax under given conditions. See, e.g., General Statutes § 12-430 (5);[9] *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 600–601, 362 A.2d 847 (1975).

As our discussion suggests, we consider the issue in these cases to be whether the state may constitutionally impose the use tax on these vessels under the circumstances present here. Since we have not been presented with sufficient information to ascertain what those circumstances are, we must remand these cases for trial. On remand we believe the parties should devote particular attention to the following matters.

The defendants claim that the vessels which they operated were engaged in "interstate commerce" and thus beyond the taxing authority of the state of Connecticut. We believe that more than a bald assertion is necessary to sustain the conclusion that these vessels were engaged in interstate commerce. We note that a use tax has been assessed upon a yacht which, although purchased in Delaware, was sailed repeatedly in Rhode Island waters. *Randall* v. *Norberg,* 121 R.I.

[9] General Statutes § 12-430 (5) provides: "(5) PAYMENT OF SALES OR USE TAX TO ANOTHER STATE. If any service or article of tangible personal property has already been subjected to a sales or use tax by any other state or political subdivision therof and payment made thereon in respect to its sale or use in an amount less than the tax imposed by this chapter, the provisions of this chapter shall apply, but at a rate measured by the difference, only, between the rate herein fixed and the rate by which the previous tax upon the sale or use was computed. If such tax imposed in such other state or political subdivision thereof is equivalent to or in excess of the rate imposed under this chapter at the time of such sale or use, then no tax shall be due on such article."

714, 720, 403 A.2d 240 (1979). The imposition of the Ohio use tax was upheld as applied to a vessel purchased in Florida, for use in Florida, which was docked in Ohio for two weeks for repairs and installation of new equipment. *Louisville Title Agency* v. *Kosydar,* 43 Ohio St. 2d 109, 330 N.E.2d 899 (1975); cf. *Roberta, Inc.* v. *Inhabitants of Town of Southwest Harbor,* 449 A.2d 1138 (Me. 1982). And in *North Slope Borough* v. *Puget Sound Tug & Barge,* 598 P.2d 924 (Alaska 1979), the Alaska ad valorem property tax was applied to out-of-state commercial seagoing vessels trapped for five months in frozen coastal waters. We expect that on remand the parties will present the trial court with some precedential authority for their constitutional claims. See generally annot., 3 A.L.R.4th 837, 888.

If on remand it should be found that these vessels were, in fact, engaged in some form of interstate commerce, the defendants' task would not yet be at an end. The United States Supreme Court has held that "a state tax is not *per se* invalid because it burdens interstate commerce since interstate commerce may constitutionally be made to pay its way." *Maryland* v. *Louisiana,* 451 U.S. 725, 754, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981). If the state tax "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State," no impermissible burden on interstate commerce will be found. *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 279, 97 S. Ct. 1076, 51 L. Ed. 2d 326, reh. denied, 430 U.S. 976, 97 S. Ct. 1669, 52 L. Ed. 2d 371 (1977); see *Container Corporation of America* v. *Franchise Tax Board,* 463 U.S. 159, 166–67, 103 S. Ct. 2933, 77 L. Ed. 2d 545, reh. denied, 464 U.S. 909, 104 S. Ct. 265, 78 L. Ed. 2d 248 (1983); *Commonwealth Edison Co.* v. *Montana,* 453 U.S. 609, 622–24, 101 S. Ct. 2946, 69 L. Ed. 2d

884 (1981). The vessels in the present cases are owned by Delaware corporations about which we are told nothing except that some of the defendants are shareholders. Since the defendants claim that these vessels are engaged in interstate commerce, we believe it only reasonable, on remand, that inquiry be made into the business of their corporate owners. We note that the nexus between these vessels and the state of Connecticut does not depend entirely on the owners' state of incorporation.[10] Additional factual inquiry will be required on the subject of whether the use tax sought to be imposed in these cases was apportioned in relation to taxes paid in other states, if any; see General Statutes § 12-430 (5); whether the tax unfairly discriminates against interstate commerce, and whether the tax is fairly related to services provided by the state. See *Commonwealth Edison Co.* v. *Montana,* supra, 624. In short, the trial court should make the factual findings mandated in *Complete Auto Transit, Inc.* v. *Brady,* supra.

In order that these issues may be properly focused on remand, we draw attention to a final matter. The defendants in their brief rely extensively on the "home port doctrine" as a rule of state taxation. According to that doctrine, an oceangoing vessel is taxable only in the jurisdiction of its home port, and not in each jurisdiction through which it happens to pass. *Hays* v. *Pacific Mail Steamship Co.,* 58 U.S. 596, 15 L. Ed. 254

---

[10] For example, if it should appear that these vessels were kept in Connecticut although nominally homeported in another taxing jurisdiction, this fact would be more relevant to imposition of the use tax than the fact of their ownership by a Delaware corporation. Our use tax is complimentary to the sales tax; *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 299, 57 A.2d 128 (1948); and by its terms applies, irrespective of residency, to "[e]very person storing, accepting, consuming or otherwise using in this state . . . tangible personal property purchased from a retailer . . . ." General Statutes § 12-411 (2). The relevant inquiry thus concerns the use of the vessels in Connecticut and not their place of purchase, home port, or the residency of their corporate owners.

(1855). Since Connecticut is not the home port of any of the vessels under consideration here, the defendants contend that Connecticut has no jurisdiction to assess the use tax against them.

In *Japan Line, Ltd.* v. *County of Los Angeles,* 441 U.S. 434, 99 S. Ct. 1813, 60 L. Ed. 2d 336 (1979), the United States Supreme Court traced the development and demise of the "home port doctrine," stating that "[t]his theory of taxation, of course, has fallen into desuetude, and . . . has yielded to a rule of fair apportionment among the States." Id., 442. The issue in that case was whether a state may impose an apportioned ad valorem property tax on instrumentalities of commerce "that are owned, based, and registered abroad and that are used exclusively in international commerce . . . ." Id., 444. While concluding that the tax could not constitutionally be imposed on the foreign instrumentalities at issue, the court assumed that if the instrumentalities had been used in "purely interstate commerce, *Complete Auto* would apply and be satisfied, and our Commerce Clause inquiry would be at an end." Id., 445. From this dicta we conclude that the "home port doctrine" as a rule of state taxation of vessels engaged exclusively in interstate commerce has been superseded by the apportionment rule in *Complete Auto.* Accord *North Slope Borough* v. *Puget Sound Tug & Barge,* supra. We recommend that the parties proceed accordingly.

We do not answer the reserved questions; these cases are remanded for further proceedings not inconsistent with this opinion.

No costs will be taxed to any party.

In this opinion the other judges concurred.