GARLAND HALL *v.* GILBERT AND BENNETT
MANUFACTURING COMPANY, INC., ET AL.
(SC 15608)

Callahan, C. J., and Borden, Norcott, Palmer and McDonald, Js.

Argued March 27—officially released June 3, 1997

*Michelle D. Truglia*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (defendant second injury fund).

*Joseph J. Passaretti, Jr.*, for the appellee (named defendant).

*Opinion*

CALLAHAN, C. J. This is an appeal by the defendant[1] second injury fund (fund), from a decision of the compensation review board (board). The principal issue is whether the board correctly concluded that the provisions of Public Acts 1995, No. 95-277, § 4 (a) (P.A. 95-277),[2] now codified at General Statutes § 31-349c,

[1] There were three defendants in this action: Gilbert and Bennett Manufacturing Company, the employer; Travelers Insurance Company, the employer's insurer; and the second injury fund. This appeal presents a controversy between the second injury fund and the other two defendants. The claimant did not file briefs with either the compensation review board or this court.

[2] Public Act 95-277, § 4, provides in relevant part: "(a) The custodian of the Second Injury Fund and an insurer or self-insured employer seeking to transfer a claim to the fund shall submit all controverted issues regarding the existence of a previous disability under section 31-349 of the general statutes, as amended by section 3 of this act, to the chairman of the Workers' Compensation Commission. The chairman shall appoint a panel of three physicians, as defined in subdivision (17) of section 31-275 of the general statutes, and submit such dispute to the panel, along with whatever evidence and materials he deems necessary for consideration in the matter. The panel may examine the claimant, who shall submit to any examination such panel may require. Within sixty days of receiving the submission, the panel shall file its opinion, in writing, with the chairman, who shall forward it, along with any records generated by the panel's work on the case, to the commissioner having jurisdiction over the claim in which the dispute arose. The panel's opinion shall be determined by a majority vote of the three members. Such opinion shall be binding on all parties to the claim and may not be appealed to the Compensation Review Board pursuant to section 31-301 . . . ."

applied prospectively only and did not apply retroactively to a claim in which the claimant's second injury occurred before July 1, 1995, the effective date of P.A. 95-277. Section 31-349c requires a party seeking to transfer liability for a claim to the fund pursuant to General Statutes § 31-349 (a) and (b)[3] to submit all controverted

---

[3] General Statutes § 31-349 provides in relevant part: "Compensation for second disability. Payment of insurance coverage. . . . (a) The fact that an employee has suffered a previous disability, shall not preclude him from compensation for a second injury, nor preclude compensation for death resulting from the second injury. *If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone, he shall receive compensation for (1) the entire amount of disability, including total disability, less any compensation payable or paid with respect to the previous disability, and (2) necessary medical care, as provided in this chapter, notwithstanding the fact that part of the disability was due to a previous disability.* For purposes of this subsection, 'compensation payable or paid with respect to the previous disability' includes compensation payable or paid pursuant to the provisions of this chapter, as well as any other compensation payable or paid in connection with the previous disability, regardless of the source of such compensation.

"(b) As a condition precedent to the liability of the Second Injury Fund, the employer or its insurer shall: (1) Notify the custodian of the fund by certified mail no later than three calendar years after the date of injury or no later than ninety days after completion of payments for the first one hundred and four weeks of disability, whichever is earlier, of its intent to transfer liability for the claim to the Second Injury Fund; (2) include with the notification (A) copies of all medical reports, (B) an accounting of all benefits paid, (C) copies of all findings, awards and approved voluntary agreements, (D) the employer's or insurer's estimate of the reserve amount to ultimate value for the claim, (E) a two-thousand-dollar notification fee payable to the custodian to cover the fund's costs in evaluating the claim proposed to be transferred and (F) such other material as the custodian may require. The employer by whom the employee is employed at the time of the second injury, or its insurer, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. Failure on the part of the employer or an insurer to comply does not relieve the employer or insurer of its obligation to continue furnishing compensation under the provisions of this chapter. The custodian of the fund shall, by certified mail, notify a self-insured employer or an insurer, as applicable, of the rejection of the claim within ninety days after receiving the completed notification. Any claim

issues concerning the existence of a previous disability to the chairman of the workers' compensation commission (chairman), who is required to submit such disputes to a three physician panel for determination. We conclude that the legislature intended § 31-349c to apply retroactively. We therefore reverse the decision of the board and remand the case for further proceedings.

The record reveals the following facts and procedural history. On June 23, 1980, the claimant, Garland Hall, sustained an injury to his cervical spine arising out of and in the course of his employment with the defendant Gilbert and Bennett Manufacturing Company, Inc. (Gilbert and Bennett). On August 11, 1983, the defendant Travelers Insurance Company (Travelers), the workers' compensation carrier for Gilbert and Bennett, notified the fund, on behalf of Gilbert and Bennett, of its intent to transfer liability for Hall's claim to the fund pursuant to § 31-349. In support of its transfer request, Travelers alleged that Hall had various spinal conditions that pre-

which is not rejected pursuant to this section shall be deemed accepted, unless the custodian notifies the self-insured employer or the insurer within the ninety-day period that up to an additional ninety days is necessary to determine if the claim for transfer will be accepted. If the claim is accepted for transfer, the custodian shall file with the workers' compensation commissioner for the district in which the claim was filed, a form indicating that the claim has been transferred to the Second Injury Fund and the date that such claim was transferred and shall refund fifteen hundred dollars of the notification fee to the self-insured employer or the insurer, as applicable. A copy of the form shall be mailed to the self-insured employer or the insurer and to the claimant. No further action by the commissioner shall be required to transfer said claim. *If the custodian rejects the claim of the employer or its insurer, the question shall be submitted by certified mail within thirty days of the receipt of the notice of rejection by the employer or its insurer to the commissioner having jurisdiction, and the employer or insurer shall continue furnishing compensation until the outcome is finally decided.* Claims not submitted to the commissioner within said time period shall be deemed withdrawn with prejudice. If the employer or insurer prevails, or if the custodian accepts the claim all payments made beyond the one-hundred-four-week period shall be reimbursed to the employer or insurer by the Second Injury Fund. . . ." (Emphasis added.)

dated the June 23, 1980 injury, and that the combination of these preexisting permanent conditions with the injuries sustained in the 1980 accident resulted in a permanent disability materially and substantially greater than would have existed in the absence of the preexisting conditions. The fund questioned the medical assertions of Travelers, and eventually rejected Travelers' transfer request.

On August 8, 1995, at Travelers' request, the trial commissioner (commissioner) held a formal hearing addressing whether transfer of Hall's claim to the fund was appropriate. At the hearing, the fund argued that the commissioner had no jurisdiction to entertain Travelers' transfer request because P.A. 95-277, § 4 (a), mandated that all contested issues regarding the existence of a previous disability under § 31-349 were to be decided by a panel of three physicians to be appointed by the chairman. The commissioner agreed with the fund.[4]

---

[4] We have, in the record before us, a transcript of the August 8, 1995 hearing. The relevant colloquy between the attorneys and the trial commissioner was as follows:

"Commissioner [John A.] Arcudi: Well, Attorney [Michelle] Truglia, I understand that there's objection to this going forward at the present time in this venue, in this jurisdiction.

"Ms. Truglia [representing the fund]: Yes, Commissioner.

"Commissioner Arcudi: This venue.

"Ms. Truglia: *Based upon the July 1, 1995 revision to Chapter 568, Public Act 95-277, [§] 4, it now requires any contested bases for transfer to the Fund to be heard by a three person medical panel, and we feel that Your Honor has no jurisdiction to hear any argument on the matter of transferability to the Fund.*

"Commissioner Arcudi: So you're resisting any proceedings today?

"Ms. Truglia: Yes, Commissioner . . .

"Commissioner Arcudi: *Well, I have very limited—no constitutional jurisdiction to declare an act of the legislature unconstitutional. My duty is to follow the act. The act now says a medical question on a previous impairment needs to be submitted to the Chairman so the Chairman can submit it to the medical panel. So obviously I must grant the Fund's request within the parameters of Section [Four of the] Public Act. I will proceed that way. I don't think I'm going to do anything. I think it's going to be up to the Fund to submit the question. . . .*

Travelers subsequently petitioned the board for review of the commissioner's decision. The board reversed the commissioner's decision and remanded the case for a hearing on the transfer request. After first determining that it had jurisdiction to consider Travelers' appeal, the board concluded that P.A. 95-277, § 4 (a), affected substantive rather than procedural rights, and, therefore, that it should be applied only prospectively from July 1, 1995, its effective date.[5] The fund appealed from the decision of the board to the

"Commissioner Arcudi: . . . . Do you need anything in writing on that; you may.

"Ms. D'Angelo [representing Gilbert and Bennett and Travelers]: I think we do, Commissioner.

"Commissioner Arcudi: You want to submit some order for me to sign so that we can move it? I mean, I'm going to deny your objection to Attorney Truglia's request to be permitted to submit this to the medical panel. Do you want to have—how do you want me to word the denial so that the issues that are left will still remain? I think maybe you ought to do that.

"Ms. D'Angelo: I think we do need an order in writing.

"Commissioner Arcudi: Will you draft it? Attorney Truglia, one of you agree on it, draft it, I'll sign it.

"Ms. Truglia: Are you saying you're going to appeal from his denial of *your right to go forward? That's why you want an order?*

"Commissioner Arcudi: I think they need an order, unless you can take the transcript. I can deny Travelers' objection to your request to be permitted to submit it to the medical panel. I am denying it. If you want the transcript, I've given you a verbal order. In other words, you want to include something in the order that hasn't been covered in the transcript because of any future bases for a legal argument, I'll permit you to draft such a thing. Otherwise, you can take the transcript and I've denied your objection.

"Ms. D'Angelo: We might need something in writing. I'm not saying I'm going to be appealing this. I don't know. This seems to be new territory we are venturing into. I want to have something in writing.

"Commissioner Arcudi: You can have it in the transcript. By ordering a transcript that may be sufficient. You may want something else. Let us know. In the meantime, order the transcript. I won't close this part of the proceeding, not the case anyway. So you're ordering a transcript?

"Ms. D'Angelo: Yes.

"Commissioner Arcudi: Attorney Truglia?

"Ms. Truglia: I'll take one, too." (Emphasis added.)

[5] Commissioner Robin L. Wilson concurred in part with and dissented in part from the opinion of the board. Although Wilson agreed that the board had jurisdiction to consider Travelers' appeal, she disagreed with the board's

Appellate Court pursuant to General Statutes § 31-301b,[6] and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

## I

The first issue that this court must address is whether we have jurisdiction to consider the merits of the fund's appeal. That inquiry initially requires us to answer two questions: First, we must determine whether the board had subject matter jurisdiction over Travelers' appeal pursuant to General Statutes § 31-301 (a).[7] Next, we must determine whether the board's decision constituted an appealable final judgment pursuant to § 31-301b. If we determine, on the basis of the answers to those two questions, that the present appeal is not properly before us, we then must determine whether there is another jurisdictional basis to consider the merits of the appeal.

We first address the question of whether the board had subject matter jurisdiction. In its brief to the board, the fund declined to argue the merits of Travelers' appeal. Rather, it claimed, inter alia, that the board

conclusion that P.A. 95-277, § 4 (a), did not apply retroactively to all pending cases.

[6] General Statutes § 31-301b provides: "Appeal of decision of Compensation Review Board. Any party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court."

[7] General Statutes § 31-301 provides in relevant part: "(a) At any time within ten days *after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b,* either party may appeal therefrom to the Compensation Review Board by filing in the office of the commissioner from which the award or the decision on a motion originated an appeal petition and five copies thereof. The commissioner within three days thereafter shall mail the petition and three copies thereof to the chief of the Compensation Review Board and a copy thereof to the adverse party or parties. . . ." (Emphasis added.)

lacked jurisdiction to entertain the appeal because, the fund contended, none of the statutory prerequisites necessary under § 31-301 (a) for an appeal to the board existed. In support of this claim, the fund argued that, because the commissioner had not entered an award, had not issued a decision on a motion, and had not issued an order pursuant to General Statutes § 31-299b,[8] the board lacked jurisdiction. The board concluded, however, on the basis of the provision of § 31-301 (a) allowing a party to appeal from a commissioner's decision on a motion, that it did have jurisdiction over Travelers' appeal from the commissioner's decision. In its brief to this court, the fund renewed its argument that the board lacked subject matter jurisdiction.[9]

We begin our analysis by noting that "[a]dministrative agencies are tribunals of limited jurisdiction and their

[8] General Statutes § 31-299b provides: "Initial liability of last employer. Reimbursement. If an employee suffers an injury or disease for which compensation is found by the commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, shall be initially liable for the payment of such compensation. The commissioner shall, within a reasonable period of time after issuing an award, on the basis of the record of the hearing, determine whether prior employers, or their insurers, are liable for a portion of such compensation and the extent of their liability. *If prior employers are found to be so liable, the commissioner shall order such employers or their insurers to reimburse the initially liable employer or insurer according to the proportion of their liability.* Reimbursement shall be made within ten days of the commissioner's order with interest, from the date of the initial payment, at twelve per cent per annum. If no appeal from the commissioner's order is taken by any employer or insurer within ten days, the order shall be final and may be enforced in the same manner as a judgment of the Superior Court." (Emphasis added.)

[9] At oral argument before this court, the fund offered to withdraw its jurisdictional argument if we reached the merits of its appeal. Because "an absence of jurisdiction over the subject matter cannot be cured by waiver either in the trial court or [in this court]"; *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 540, 489 A.2d 363 (1985); see also *Neyland* v. *Board of Education*, 195 Conn. 174, 177, 487 A.2d 181 (1985); *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 678–79 n.1, 485 A.2d 1280 (1984); we must address whether the board had subject matter jurisdiction over the appeal, regardless of the fund's attempt to abandon the argument.

jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves. . . . [A]n administrative body must act strictly within its statutory authority, within constitutional limitations and in a lawful manner. . . . It cannot modify, abridge or otherwise change the statutory provisions, under which it acquires authority unless the statutes expressly grant it that power." (Citations omitted; internal quotation marks omitted.) *Castro* v. *Viera*, 207 Conn. 420, 428, 541 A.2d 1216 (1988). "It is a familiar principle that [an administrative agency] which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Internal quotation marks omitted.) Id., 427–28.

Section 31-301 (a) defines the board's appellate jurisdiction. It affords parties the right to appeal from three distinct actions of a commissioner: (1) an entry of an award; (2) a decision upon a motion; or (3) an order according to the provisions of § 31-299b. *Dixon* v. *United Illuminating Co.*, 232 Conn. 758, 775–76, 657 A.2d 601 (1995). The commissioner did not enter an award, nor did he issue an order according to the provisions of § 31-299b. The only basis upon which the board could have exercised jurisdiction, therefore, was the provision of § 31-301 (a) allowing an appeal from a commissioner's decision on a motion. Consequently, the question before us is whether the commissioner's ruling at the August 8, 1995 hearing properly can be characterized as a decision on a motion. There is no definition of "motion" in the Worker's Compensation Act, General Statutes § 31-275 et seq. Practice Book § 197,[10] however, defines a motion as "any application

[10] Practice Book § 197 provides: "Definition of 'Motion' and 'Request'

"As used in these rules, the term 'motion' means any application to the court for an order, which application is to be acted upon by the court or any judge thereof; and the term 'request' means any application to the court

to the court for an order, which application is to be acted upon by the court or any judge thereof . . . ." Black's Law Dictionary (6th Ed. 1990) defines a "motion" as "[a]n application made to a court or judge for [the] purpose of obtaining a rule or order directing some act to be done in favor of the applicant."

With these two definitions in mind, we turn to the commissioner's ruling at the August 8, 1995 hearing. Travelers ostensibly requested the hearing so that the commissioner could hear evidence and make a determination of all of the factual issues necessary to transfer liability for Hall's claim to the fund pursuant to § 31-349. See footnote 3 of this opinion. The fund objected to the hearing claiming that P.A. § 95-277, § 4 (a), removed from the commissioner's purview any determination regarding the existence of a previous disability. We construe the fund's objection to the August 8, 1995 hearing going forward, and its request that the previous disability issue be submitted to the chairman pursuant to P.A. 95-277, § 4 (a), as an application to the commissioner for a continuance of the proceeding pending submission of the previous disability issue to the chairman, and the rendering of an opinion by a three physician panel appointed by the chairman pursuant to P.A. 95-277, § 4 (a). In essence, the fund orally moved the commissioner for "a rule or order directing some act to be done in favor of the applicant"; Black's Law Dictionary (6th Ed.); i.e., to continue the proceeding pending further proceedings in accordance with the provisions of P.A. 95-277, § 4 (a). We conclude that the commissioner's oral ruling granting the fund's application for a continuance of the proceeding amounted to a decision on a motion pursuant to § 31-301 (a) and, therefore, that the board properly determined that it had subject matter jurisdiction over Travelers' appeal.

which shall be granted by the clerk by operation of these rules unless timely objection is filed."

We next must determine whether the board's decision reversing and remanding the case to the commissioner constitutes an appealable final judgment in accordance with § 31-301b and our case law interpreting § 31-301b. We raised this issue, sua sponte, prior to oral argument. Section 31-301b provides that "[a]ny party aggrieved by the decision of the [c]ompensation [r]eview [b]oard upon any question or questions of law arising in the proceedings may appeal the decision of the [c]ompensation [r]eview [b]oard to the Appellate Court." We have stated, however, that "appellate review of disputed claims of law and fact ordinarily must await the rendering of a final judgment by the compensation review [board]." (Internal quotation marks omitted.) *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 185, 588 A.2d 194 (1991). "The test that determines whether such a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed." (Internal quotation marks omitted.) Id., 185–86; see also *Szudora* v. *Fairfield*, 214 Conn. 552, 556, 573 A.2d 1 (1990); *Matey* v. *Estate of Dember*, 210 Conn. 626, 631, 556 A.2d 599 (1989).

On Travelers' appeal to the board, the board determined that P.A. 95-277, § 4 (a), affected substantive rather than procedural rights, and, therefore, that its provisions requiring a three physician panel to decide all controverted issues concerning the existence of a previous disability could be applied only prospectively from the effective date of the act, July 1, 1995. Because the claimant's injury in the present case predated July 1, 1995, the board determined that P.A. 95-277, § 4 (a), did not apply. The board, therefore, reversed the commissioner's ruling and remanded the case to the com-

missioner for a hearing on, among other things, the issue of Hall's previous disability. On remand, the commissioner, after allowing the parties to present evidence on the issue, would be required to exercise his independent judgment and discretion to determine, among other things, whether the claimant suffered from a previous disability. Such an undertaking by the commissioner cannot fairly be construed as ministerial. We conclude, therefore, that the board's decision reversing and remanding the case does not constitute an appealable final judgment pursuant to *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 185, *Szudora* v. *Fairfield*, supra, 214 Conn. 556, and *Matey* v. *Estate of Dember*, supra, 210 Conn. 631.

At oral argument before this court, the fund asked that we revisit our decisions interpreting a final judgment requirement into § 31-301b. See *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 185; *Szudora* v. *Fairfield*, supra, 214 Conn. 556; *Matey* v. *Estate of Dember*, supra, 210 Conn. 631. The fund argued that § 31-301b does not require a final judgment in order for a party to appeal from the board to the Appellate Court because the text of § 31-301b, unlike the text of General Statutes §§ 4-183[11] and 52-263,[12] does not contain such a prerequisite. Rather, § 31-301b allows any party

[11] General Statutes § 4-183 provides in relevant part: "Appeal to Superior Court. (a) A person who has exhausted all administrative remedies available within the agency *and who is aggrieved by a final decision* may appeal to the Superior Court as provided in this section. . . ." (Emphasis added.)

[12] General Statutes § 52-263 provides in relevant part: "Appeals from Superior Court. Exceptions. Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, *if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial*, including the denial of a motion to set aside a verdict, *he may appeal to the court having jurisdiction from a final judgment of the court or of such judge*, or from the decision of the court granting a motion to set aside a verdict . . . ." (Emphasis added.)

aggrieved by a decision of the board "upon any question or questions of law arising in the proceedings" to appeal to the Appellate Court. The fund contended that the absence of a final judgment requirement in the text of § 31-301b was consistent with other provisions of the Workers' Compensation Act. In sum, the fund has requested that we overrule our previous decisions interpreting § 31-301b to require a final decision by the board before such a decision may be appealed. We decline the fund's request.

The interpretation of § 31-301b is a question of statutory construction. Our fundamental objective when construing a statute "is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d 851 (1996).

We acknowledge that the text of § 31-301b does not contain language requiring a final judgment in order for a party to appeal to the Appellate Court. In speaking on the floor of the Senate about a proposed amendment to Public Acts 1979, No. 79-540, § 3 (P.A. 79-540), the genesis of § 31-301b, however, Senator Salvatore C. DePiano stated: "Mr. President, the Amendment merely indicates that the appellate session of the Superior Court shall have jurisdiction [over] appeals *from any final judgment or action* in the following [manner] which would now include, if this Bill is passed, any proceeding of the Compensation Review Division for Work[ers'] Compensation appeals arising under Section 5 of this Act." (Emphasis added.) 22 S. Proc., Pt. 9, 1979 Sess., p. 2939. The legislature subsequently adopted the amendment of which Senator DePiano spoke. Id., p.

2940. Although, as the fund has indicated, the legislature expressly has included final judgment language in the text of other statutes governing appeals from the Superior Court and from other administrative agencies; see footnotes 11 and 12 of this opinion; we nonetheless conclude that Senator DePiano's remarks on the floor of the Senate raise an issue as to whether the legislature intended § 31-301b to contain a final judgment requirement. We resolve this ambiguity by adhering to the doctrine of stare decisis and following established precedent.

The doctrine of stare decisis counsels that "a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." (Internal quotation marks omitted.) *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 196, 676 A.2d 831 (1996). Stare decisis "is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency." *Conway* v. *Wilton*, 238 Conn. 653, 658–59, 680 A.2d 242 (1996). "It is the most important application of a theory of decisionmaking consistency in our legal culture and it is an obvious manifestation of the notion that decisionmaking consistency itself has normative value." (Internal quotation marks omitted.) Id., 658.

In evaluating the force of stare decisis, our case law dictates that we should be especially wary of overturning a decision that involves the construction of a statute. See *Jolly, Inc.* v. *Zoning Board of Appeals*, supra, 237 Conn. 196; *General Electric Employees Federal Credit Union* v. *Zakrzewski*, 235 Conn. 741, 744, 670 A.2d 274 (1996); *Kluttz* v. *Howard*, 228 Conn. 401, 406, 636 A.2d 816 (1994); *White* v. *Burns*, 213 Conn. 307, 333–34, 567 A.2d 1195 (1990); *Herald Publishing Co.* v. *Bill*, 142 Conn. 53, 61–62, 111 A.2d 4 (1955). "When we construe a statute, we act not as plenary lawgivers but as surro-

gates for another policy maker, the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do. Sometimes, when we have made such a determination, the legislature instructs us that we have misconstrued its intentions. We are bound by the instructions so provided. . . . More often, however, the legislature takes no further action to clarify its intentions. Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Citations omitted.) *Conway* v. *Wilton*, supra, 238 Conn. 682–83 (*Peters, C. J.*, dissenting).

The first of our decisions construing § 31-301b to require that a party appealing from a decision of the board must appeal from a final decision; *Matey* v. *Estate of Dember*, supra, 210 Conn. 631; was rendered in 1989. In 1991, two years after *Matey* and one year after *Szudora* v. *Fairfield*, supra, 214 Conn. 556, the legislature enacted a comprehensive reform of the Workers' Compensation Act, yet only affected a nonsubstantive change to § 31-301b. See Public Acts 1991, No. 91-339, § 22 (P.A. 91-339) (substituting "review board" for "review division"). The legislature's failure to amend § 31-301b following our interpretation of it in *Matey* and *Szudora*, which both predated legislative consideration of P.A. 91-339, provides adequate support for our disinclination to overrule controlling precedent and thereby "effect an amendment by the process of judicial interpretation." *Herald Publishing Co.* v. *Bill*, supra, 142 Conn. 63; see also *White* v. *Burns*, supra, 213 Conn. 333–34. "The legislature is presumed to be aware of the interpretation which the courts have placed upon one

of its legislative enactments and of the effect that its own nonaction, thereafter, may have." *Herald Publishing Co.* v. *Bill,* supra, 63. In short, the fund has not presented "cogent reasons and inescapable logic" that compel us to overrule our prior decisions interpreting § 31-301b. *Jolly, Inc.* v. *Zoning Board of Appeals,* supra, 237 Conn. 196.

Our conclusion that the board's decision did not constitute an appealable final judgment, however, does not foreclose consideration of the merits of the present appeal. In response to our raising of the final judgment issue, sua sponte, the fund requested, in a letter sent in accordance with Practice Book § 4064J, that this court consider General Statutes § 52-265a[13] as an alternative basis for jurisdiction. Section 52-265a "allows the chief justice to certify a direct appeal to the Supreme Court from an interlocutory order of the Superior Court on an issue of law that 'involves a matter of substantial public interest and in which delay may work a substantial injustice.' " *State* v. *Ayala,* 222 Conn. 331, 341, 610

[13] General Statutes § 52-265a provides: "Direct appeal on questions involving the public interest. (a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The Chief Justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the Chief Justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the Chief Justice, who shall thereupon call a special session of the Supreme Court for the purpose of an immediate hearing upon the appeal.

"(d) The Chief Justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."

A.2d 1162 (1992). Consideration of § 52-265a as a basis for jurisdiction in the present case raises two questions: (1) whether an appeal from an interlocutory decision of the board is within the ambit of § 52-265a, since that statute, on its face, allows parties to appeal only from orders or decisions of the Superior Court; and (2) whether § 52-265a is an appropriate basis for jurisdiction in view of the fact that the fund failed to follow the certification procedures set forth in the statute.

We first address whether an appeal from a board decision fits within the parameters of § 52-265a, in view of the fact that § 52-265a, on its face, allows appeals only from orders or decisions of the Superior Court. The legislature enacted § 52-265a in 1967 to provide an expedited means of appealing from the Superior Court to the Supreme Court in cases involving matters of substantial public interest and in which delay might work an injustice. Public Acts 1967, No. 895; see also 12 H.R. Proc., Pt. 6, 1967 Sess., pp. 2667–78, remarks of Representative John A. Carrozzella. At the time the legislature enacted § 52-265a, workers' compensation appeals were within its purview because the board did not exist and appeals from commissioners went directly to the Superior Court. See General Statutes (Cum. Sup. 1967) § 31-301.[14] In 1979, in order to facilitate workers' compensation appeals and foster the creation of a uniform body of workers' compensation law, the legislature established the board. P.A. 79-540, § 3; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1979 Sess., pp. 1312–13, testimony of Commissioner John A. Arcudi. Contemporaneous with the establishment of the board, the legislature altered the

---

[14] General Statutes (Cum. Sup. 1967) § 31-301 provided in relevant part: "Appeals. Preference in assignment. Costs. At any time within ten days after entry of such award by the commissioner or after a decision of the commissioner upon a motion, either party may appeal therefrom to the superior court for the county in which the injury occurred . . . ."

appellate procedure so that all appeals from the newly created board went to the appellate session of the Superior Court.[15] P.A. 79-540, § 3. Neither the text of P.A. 79-540, § 3, nor its legislative history evince an intent on the part of the legislature to remove workers' compensation appeals from the scope of § 52-265a. Rather, the legislative history of P.A. 79-540, § 3, suggests that the legislature merely sought to create an appellate body within the workers' compensation commission that both possessed expertise in that area of the law and would unburden the Superior Court of time consuming workers' compensation appeals. We conclude, therefore, that a party aggrieved by an order or decision of the board may petition this court, in accordance with the provisions of § 52-265a, in the same manner that a party aggrieved by an order or decision of the Superior Court may petition this court pursuant to § 52-265a.

We next address whether the fund's failure to follow the procedures of § 52-265a precludes our consideration of § 52-265a as a basis for jurisdiction in the present case. In the ordinary situation, a litigant must request § 52-265a certification within two weeks from the date of the issuance of the order or decision for which review is being sought. In the present case, no such request for certification was ever filed with this court. Rather, the fund simply appealed the decision of the board to the Appellate Court pursuant to § 31-301b, and we transferred the case to this court. Prior to the present case, however, the fund had no reason to believe that it could file a petition for an expedited appeal from the board to this court pursuant to § 52-265a. For that reason, we conclude that the fund's failure to follow the normal certification procedure is not a bar to our consideration of § 52-265a as a basis for

---

[15] In 1983, the legislature replaced the reference to the appellate session of the Superior Court in § 31-301b with a reference to the Appellate Court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 14.

jurisdiction. Rather, we choose to treat the fund's appeal as a late petition for certification pursuant to § 52-265a. As chief justice, I have agreed to waive the fund's delay in filing its petition, and have determined—on the basis of the legislature's enactment of Public Acts 1996, No. 96-242, §§ 1 and 2,[16] which imposes a temporal deadline on the resolution of all transfer claims—that the fund's appeal concerns a matter of substantial public interest in which delay may work an injustice. See *State* v. *Ayala*, supra, 222 Conn. 341–42.[17] The merits of the fund's appeal, therefore, are properly before this court.

## II

The fund's substantive argument requires us to determine whether the provisions of P.A. 95-277, § 4 (a), requiring a panel of three physicians to decide all controverted issues concerning the existence of a previous disability, applies retroactively to cases in which the claimant's second injury predated the effective date of

---

[16] Public Acts 1996, No. 96-242, §§ 1 and 2 provide: "Section 1. Section 31-349 of the general statutes, as amended by section 3 of public act 95-277, is amended by adding subsection (f) as follows:

"(NEW) (f) *No claim, where the custodian of the Second Injury Fund was served with a valid notice of intent to transfer under this section, shall be eligible for transfer to the Second Injury Fund unless all requirements for transfer,* including payment of the one hundred and four weeks of benefits by the employer or its insurer, *have been completed prior to July 1, 1999.* All claims, pursuant to this section, not eligible for transfer to the fund on or before July 1, 1999, will remain the responsibility of the employer or its insurer.

"Sec. 2. (NEW) *All transfers of claims to the Second Injury Fund with a date of injury prior to July 1, 1995, shall be effected no later than July 1, 1999.* All claims not transferred to the Second Injury Fund, on or before July 1, 1999, shall remain the responsibility of the employer or its insurer." (Emphasis added.)

[17] In *State* v. *Ayala*, supra, 222 Conn. 341–42, we treated a defendant's petition for certification under General Statutes § 51-197f as a late petition under § 52-265a. We entertained the merits of the appeal despite the defendant's failure to follow the procedures of § 52-265a on the basis, in large part, of the importance of the issues in the case. Id., 344.

the act, July 1, 1995. The fund contends that the board improperly concluded that P.A. 95-277, § 4 (a), applied only prospectively. The fund argues that the legislature intended P.A. 95-277, § 4 (a), to apply retroactively because, in § 3 (d) of P.A. 95-277, now codified at General Statutes § 31-349 (d),[18] the legislature effectively eliminated the transfer of cases in which the claimant's second injury occurred on or after July 1, 1995. The fund argues, therefore, that the only logical interpretation of § 4 (a) of P.A. 95-277, when read together with § 3 (d), is that the legislature intended § 4 (a) to apply retroactively to transfer cases in which the claimant's second injury occurred prior to July 1, 1995. Otherwise, the fund argues, P.A. 95-277, § 4 (a), would have no effect whatsoever. We agree.

Our analysis of P.A. 95-277, § 4 (a), is governed by well settled principles of statutory construction. We are mindful of the accepted principle that "a statute affecting substantive rights is to be applied only prospectively unless the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." *Turner* v. *Turner*, 219 Conn. 703, 712, 595 A.2d 297 (1991); see also General Statutes § 55-3; *Darak* v. *Darak*, 210 Conn. 462, 467–68, 556 A.2d 145 (1989). We are equally mindful, however, of other "compelling principles of statutory construction [that] require us to construe a statute in a manner that will not thwart [the legislature's] intended purpose or lead to absurd results. *Sutton* v. *Lopes*, 201 Conn. 115, 121, 513 A.2d 139, cert. denied sub nom. *McCarthy* v. *Lopes*, 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986); *Narel* v. *Liburdi*, 185 Conn. 562, 571, 441 A.2d 177

---

[18] General Statutes § 31-349 provides in relevant part: "(d) Notwithstanding the provisions of this section, no injury which occurs on or after July 1, 1995, shall serve as a basis for transfer of a claim to the Second Injury Fund under this section. All such claims shall remain the responsibility of the employer or its insurer under the provisions of this section. . . ."

(1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982). We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. *Peck* v. *Jacquemin*, 196 Conn. 53, 63–64, 491 A.2d 1043 (1985). If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable. *State* v. *Uretek, Inc.*, 207 Conn. 706, 719, 543 A.2d 709 (1988); *State* v. *Parmalee*, 197 Conn. 158, 165, 496 A.2d 186 (1985). We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions. *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 407, 528 A.2d 805 (1987)." *Turner* v. *Turner*, supra, 712–13.

After reviewing the text of P.A. 95-277 in its entirety, we conclude that the legislature clearly and unequivocally intended § 4 (a) to apply retroactively to those transfer claims in which the claimant's second injury occurred prior to July 1, 1995. If we were to conclude that the legislature intended § 4 (a) of P.A. 95-277 to apply only prospectively from the effective date of the act, we would render it a legal nullity, since § 3 (d) of the same act effectively terminated the transfer of cases in which the second injury occurred on or after July 1, 1995, the effective date of the act. Such an interpretation would be illogical and would run contrary to the principle that "[c]ourts must presume that the [legislature] did not intend to enact useless legislation." *Union Trust Co.* v. *Heggelund*, 219 Conn. 620, 626, 594 A.2d 293 (1991). Rather, we must interpret § 4 (a) of P.A. 95-277 to be consistent with § 3 (d) of the act so that "no word, phrase, or clause [of the act] will be rendered insignificant." *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 7, 434 A.2d 293 (1980). We note that the only relevant legislative history sug-

gests that the legislature enacted § 4 (a) of P.A. 95-277 in an effort to expedite the resolution of disputes concerning the existence of a previous disability. 38 H.R. Proc., Pt. 16, 1995 Sess., p. 5951, remarks of Representative James O'Rourke; 38 S. Proc., Pt. 15, 1995 Sess., p. 5488, remarks of Senator John A. Kissel. With the enactment of § 3 (d) of P.A. 95-277, such disputes could exist only in cases in which the claimant's second injury occurred prior to July 1, 1995. We think the legislature's clear intent, therefore, was for the provisions of § 4 (a) of P.A. 95-277 to apply retroactively to cases, such as the present case, in which the claimant's second injury occurred prior to July 1, 1995.

Travelers argues that P.A. 95-277, § 4 (a), effected at least three substantive changes in the law governing transfer of claims to the fund, namely that the act: (1) gave to the chairman broad new powers that previously did not exist; (2) required the claimant to submit to any examination that the medical panel might require; and (3) removed the right to appeal the medical panel's determination of the previous disability issue. Relying on § 55-3[19] and our case law interpreting § 55-3, Travelers argues that P.A. 95-277, § 4 (a), cannot be applied retroactively in the absence of clear and unequivocal legislative intent that it be so applied. See *Turner* v. *Turner*, supra, 219 Conn. 712. We are unpersuaded.

We have interpreted § 55-3 simply "as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only." (Internal quotation marks omitted.) *Gil* v. *Courthouse One*, 239 Conn. 676, 688, 687 A.2d 146 (1997). "The legislature only rebuts this presumption, however, when it clearly and unequivocally expresses its intent that the legisla-

---

[19] General Statutes § 55-3 provides: "Limitation of effect of certain acts. No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

tion shall apply retrospectively." (Internal quotation marks omitted.) Id. It is difficult to see how the legislature more clearly could have expressed its intent that P.A. 95-277, § 4 (a), apply retroactively than by eliminating any possibility of its prospective application with the enactment of P.A. 95-277, § 3 (d). We conclude that, with the enactment of § 3 (d) of P.A. 95-277, the legislature sufficiently rebutted any presumption in favor of prospective only application of § 4 (a) of P.A. 95-277, provided by § 55-3 and our case law. Consequently, we need not address Travelers' arguments concerning whether P.A. 95-277, § 4 (a), affected substantive rights or merely involved matters of procedure.

As additional support for its argument in favor of prospective application of P.A. 95-277, § 4 (a), Travelers cites the date of injury rule. We recently analyzed the date of injury rule in *Gil* v. *Courthouse One*, supra, 239 Conn. 685. The date of injury rule states that "new workers' compensation legislation affecting rights and obligations as between the parties, and not specifying otherwise, applie[s] only to those persons who received injuries after the legislation became effective, and not to those injured previously." (Internal quotation marks omitted.) Id. We stated, however, that "[t]he date of injury rule functions as a presumption of legislative intent within the workers' compensation context, similar to the general presumption against retroactive application of a statute." Id., 686; see also *Civardi* v. *Norwich*, 231 Conn. 287, 293 n.8, 649 A.2d 523 (1994); *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988). The legislature, therefore, may "override" the date of injury rule as long as it makes its intention clear. *Gil* v. *Courthouse One*, supra, 686. Once again, we conclude that the legislature sufficiently overcame any presumption in favor of only prospective application of P.A. 95-277, § 4 (a), provided by the date of injury rule, when, in § 3 (d) of the same act, it eliminated

the transfer of cases in which the claimant's second injury occurred on or after the effective date of the act.

## III

Finally, Travelers raises two constitutional challenges to § 31-349c, the current codification of P.A. 95-277, § 4 (a). First, Travelers argues that § 31-349c violates procedural due process under the fourteenth amendment to the United States constitution. Second, Travelers argues that § 31-349c is unconstitutionally vague. Our consideration of these claims is hindered, however, by the procedural posture in which the present case arrived at our doorstep. Because Travelers initiated this appeal from the commissioner's ruling continuing the case, pending submission of the previous disability issue to the chairman and, ultimately, to a three physician panel, the provisions of § 31-349c were never applied in the present case. Travelers never submitted the previous disability issue to the chairman and the chairman, therefore, never appointed the three physician panel. In essence, Travelers asks this court to declare § 31-349c unconstitutional on its face. We decline to do so.

"In the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face." *Sassone* v. *Lepore,* 226 Conn. 773, 778, 629 A.2d 357 (1993); *Lehrer* v. *Davis,* 214 Conn. 232, 235, 571 A.2d 691 (1990); *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 75, 523 A.2d 485 (1987). "A party mounting a constitutional challenge to the validity of a statute must provide an adequate factual record in order to meet its burden of demonstrating the statute's adverse impact on some protected interest of its own, in its own particular case, and not merely under some hypothetical set of facts as yet unproven. . . . We do not give advisory opinions, nor do we sit as roving commissions assigned

to pass judgment on the validity of legislative enactments. Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function. *International Longshoremen's & Warehousemen's Union, Local 37* v. *Boyd*, 347 U.S. 222, 224, 74 S. Ct. 447, 98 L. Ed. 650 (1954)." (Internal quotation marks omitted.) *Lehrer* v. *Davis*, supra, 234–35; see also *State* v. *Zach*, 198 Conn. 168, 177–78, 502 A.2d 896 (1985); *State* v. *Madera*, 198 Conn. 92, 105, 503 A.2d 136 (1985). "A judicial holding that a legislative Act is unconstitutional is one of very grave concern. We ought not, and will not, declare a statute to be unconstitutional unless our judgment is formed in the light of this rule of our law: It is our duty to approach the question with caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond a reasonable doubt. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Zach*, supra, 177–78; see also *State* v. *Madera*, supra, 105.

With regard to a claim that our prejudgment remedy statutes violated procedural due process on their face, we stated: "A claim that a statute fails, on it face, to comport with the constitutional requirements of procedural due process reflects a fundamental misunderstanding of the law of due process. Due process is inherently fact-bound because 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Sassone* v. *Lepore*, supra, 226 Conn. 779, quoting *Morrissey* v. *Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). "'The constitutional requirement of procedural due process thus invokes a balancing process that cannot take place in a factual vacuum.'" *Sassone* v. *Lepore*, supra, 779.

With the above principles in mind, we conclude that Travelers' arguments concerning the facial constitutionality of § 31-349c are not ripe for our review. The procedures of § 31-349c were not invoked in the present case, and, as far as we can ascertain from the parties' assertions at oral argument, have never been applied. If we were to address Travelers' constitutional arguments, we would do so in a factual vacuum. Our case law counsels against embarking on such an expedition in the absence of an adequate factual record.[20] *Sassone* v. *Lepore*, supra, 226 Conn. 779; *Lehrer* v. *Davis*, supra, 214 Conn. 234–35; *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill*, supra, 203 Conn. 75; *State* v. *Zach*, supra, 198 Conn. 177–78; *State* v. *Madera*, supra, 198 Conn. 105. Moreover, we perceive no "weighty countervailing circumstances" that counsel in favor of consideration of these constitutional claims.[21] *Sassone* v. *Lepore*, supra, 778. Although the

---

[20] In *Sassone* v. *Lepore*, supra, 226 Conn. 779–80, we addressed the plaintiffs' procedural due process claims despite the lack of an adequate factual record. We treated the appeal as if it were an appeal from a judgment following the granting of a motion to strike a complaint and assumed the truth of the facts alleged in the plaintiffs' complaint. Id., 780. We stated the issue as "whether, if a trial court were to find probable cause to order a prejudgment remedy in light of these alleged facts, such an order would violate the defendants' rights to procedural due process." Id., 780–81. We conclude, however, that the analytical process we used in *Sassone* is not appropriate for the present case. If we were to formulate the issue in the present case in the same manner that we did in *Sassone*, we would have to formulate it as follows: "Whether, if Travelers or the fund were to submit the previous disability issue to the chairman pursuant to § 31-349c, and if the chairman appointed a panel of three physicians and provided them with evidence he deemed necessary for consideration of the matter, and if the panel issued an opinion unfavorable to Travelers, such a course of events would amount to a violation of Travelers' procedural due process rights." We think that such a formulation would contain too may "ifs" to constitute a sound starting point for a constitutional analysis. We decline, therefore, to use the analytical process of *Sassone* to embark in this case on what obviously would be a dubious and premature adventure.

[21] In *Sassone*, the trial court had declared the prejudgment remedy statutes unconstitutional on their face. *Sassone* v. *Lepore*, supra, 226 Conn. 775. We were faced, therefore, with a choice of either addressing the constitutionality

legislature has imposed a deadline for the completion of all transfer claims; see footnote 16 of this opinion; and the existence of that deadline constituted a reason for our exercise of jurisdiction in this case pursuant to § 52-265a, we do not believe that the deadline constitutes a sufficiently weighty countervailing circumstance that would require us, at the present time, to decide serious constitutional questions in the absence of a factual record to review. In addition, we note that the chairman has yet to issue regulations interpreting § 31-349c. In theory, the chairman could promulgate regulations clarifying § 31-349c that might render moot any potential constitutional due process or vagueness problems. Finally, on remand, Travelers might prevail on the previous disability issue, thus precluding the necessity for us to decide the constitutionality of § 31-349c. In the absence of a concrete application of § 31-349c, or any exigent circumstances counseling immediate review of Travelers' constitutional claims, we decline to address whether § 31-349c, on its face, violates the due process protections of the fourteenth amendment to the United States constitution or is unconstitutionally vague.

## IV

To summarize, we conclude that P.A. 95-277, § 4 (a), now codified at General Statutes § 31-349c, applies retroactively to all pending transfer claims in which the claimant's second injury occurred prior to July 1, 1995. The commissioner, therefore, correctly refused to entertain Travelers' arguments concerning Hall's previous disability and properly continued the proceeding pending submission of the issue to the chairman pursuant to § 31-349c.

---

of the statutes, or allowing the trial court's decision to "cast a serious constitutional shadow over the validity of our prejudgment remedy statutes." Id., 778. The present case, however, is free from similar concerns because no court or administrative tribunal has declared § 31-349c unconstitutional.

The decision of the board is reversed and the case is remanded to the board with direction to remand it to the commissioner for further proceedings according to law.

In this opinion the other justices concurred.